As to the general principles of law applicable to this case there is no room for argument. It was the defendant's duty to keep its road-bed at the street-crossing in such condition that a traveler could pass over it in safety, or failing in this, make compensation to a person injured by reason of its omission, unless he was so deficient in reasonable and ordinary care that he brought the accident upon himself. (Laws of 1850, chap. 140, § 28, sub. 5; Cott v. Lewiston R.R. Co., 36 N.Y. 214; Gale v.N.Y.C. H.R.R.R. Co., 76 id. 594.) That the plaintiff's intestate was lawfully upon this crossing and there came to his death, is not denied. That he was shaken from the wagon, as its wheels passed into a hole within the defendant's tracks, was *Page 251 
well proven, and the trial judge, in language to which there was no exception, instructed the jury that the plaintiff could not recover unless he established, to their satisfaction, first, that the death was occasioned by the wrongful act of the defendant, either by some omission to do an act required of it, or by some positive wrongful act; and, second, that there was no negligence on the part of the deceased contributing to the injury. There was evidence upon both propositions. As to the first, the crossing is well described by the defendant's counsel "as the most difficult and dangerous place in the whole city." It required, therefore, from the defendant a great degree of care and vigilance, to the end that vehicles might not be obstructed and their passage delayed. There is evidence that such care was not exercised. The jar or shock occurred while the wagon was between the defendant's tracks. It was caused by a hole six to eight inches deep in the track between the plank and the rail. Of its severity the driver who sat in front with a companion says: "It shook us so it most shook us off the seat. We all grabbed together." It stopped the wagon for about a second, not stock still. "The planks were all so broken" that the route selected was "to avoid those holes." It is shown by other witnesses that the track at this point had been in bad condition for some days. By one that "the plank had been out for about two weeks;" by another "that the planking was in a pretty rough condition along the joints, what they call the frogs; at most of them the planks were worn off; one plank was clear out; there were eight or ten breaks; the planks ran in the direction of the steam tracks;" and by other witnesses the bad condition of the planking at this crossing for two weeks before and at the time of the accident, "its surface uneven;" "holes in it;" one place "six to eight inches deep." There is also testimony from the defendant. The jury may have found that it did not aid the defendant's case; that the care used by it at that crossing was not equal to the emergency; that the driver was not relieved so much as he should have been from the jeopardy and danger to which, under the most favorable circumstances, he would be exposed in crossing the tracks. *Page 252 
In short, that the highway or street at that point was not kept by it in a fit and safe condition for public use. There is the testimony of its superintendent of repairs, having charge of this crossing and many other places. His duty, as defined by himself, was to inspect the road and if defects were found, repair them. "On the day of this accident," he says, "the plank was some considerably worn," one in particular more than the others. On the next day he noticed that it was out, and then directed it to be replaced. He says, "about one thousand teams pass that crossing in twenty-four hours." There are many tracks, frequent passing of trains. He describes the method of planking, the frequency of reparation, the durability of the material. There was also the track foreman. On the 23d of September, and also the morning of September 24th, he says he found a plank out, others much worn, but he made no repairs until after the accident. He did on the 25th of September. It was also shown that this witness testified before the coroner upon the inquest on the body of the person killed, that "he received notice to repair the track before the accident happened." It is not impossible that the jury may have thought some negligence was proven even upon the statements of these witnesses, when considering the risks offered to property and human life by the methods of the defendant's business and its interference with the highway. They might well doubt whether it was complying with its statutory obligations to restore the street to such state "as not unnecessarily to impair its usefulness." (Laws of 1850, supra.) The perishable material used, the frequency or delay in reparation, the manner of doing it, were all subjects for their consideration. So was the other question. Judged by the result and the evidence now before us, it is apparent there was danger to be avoided, yet the intestate was rightfully traveling the public street, and without notice to the contrary, was justified in assuming that it was safe to do so. There is nothing to show that he was not intent upon his own security, or that there were any precautions omitted by him which a prudent person would have taken. But both questions were for the jury, and *Page 253 
the evidence was sufficient to put them to the answer. The learned counsel for the appellant also asserted as ground of nonsuit, that "this injury was not caused by any negligence of the defendant, but if there was any negligence in regard to these tracks, it was the negligence of the Albany Watervliet Horse Railroad Company." This company was charged with the duty of keeping the street between the rails of its track in repair, and its tracks crossed those of defendant at the point where the accident occurred. In view of the circumstances to which I have already adverted, it is clear that this could not be maintained as matter of law. The statute imposed upon the defendant a duty in regard to the street, its performance was assumed, and there was at least an apparent violation of it. There was, I think, no error in denying the motion for a nonsuit.
Were the jury misinformed or left in ignorance as to the law? The defendant's counsel asked the court to charge that "if the driver's negligence was the proximate cause of the jar which caused the injury, the plaintiff cannot recover." The trial judge replied: "I will not alter my charge in that respect. I did substantially cover that ground." The learned counsel repeated the request, and the court again declined to alter its charge. In each case there was an exception. The testator was a mason, employed on the day in question at North Albany. One Atfield was, with his wagon, drawing bricks to the same place, and at the close of the day allowed the testator and two others to ride with him to Albany. In its charge the court had called attention to these facts; the conduct of Atfield, the defendant's claim that Atfield was negligent, and said: "It is not claimed that between Atfield and the deceased the relation of master and servant or principal and agent existed; he was invited to ride, and I feel bound to say that the facts do not show a condition of things that would warrant the jury in saying that the plaintiff cannot recover, even if they should find Atfield was negligent; they were not engaged in any joint employment; and whatever doubts may have existed as to what the law was, years ago, it seems now to be settled that, *Page 254 
in a case of this character, assuming that Atfield was a competent driver and sober man, and no reason which deceased could discover why he should refuse to ride with him, I do not think that, although there might have been carelessness on the part of Atfield in driving, that would defeat a recovery, unless you should consider there was a willful act upon the part of the driver and the death was caused by his wrongful and willful act." The argument of the learned counsel for the appellant was thorough and earnest, but in support of the exception we find no authority. The charge in this respect was sufficient and within the decisions of this court, substantially in the language used by MILLER, J., in Dyer v. Erie Railway Co. (71 N.Y. 228), and within the principle of that case and that of Robinson v.N.Y.C. H.R.R.R. Co. (66 N.Y. 11). The request was properly denied. If, under any circumstances, it could be regarded as embracing a rule of law, they do not exist here. The negligence of the driver consisted, it is said, in passing the track at one point rather than another. It may be that if he had chosen some other, the accident would not have happened. But the omission to do so does not make his act the proximate cause of the jar in any such sense as excludes the defendant's negligence from being also a proximate cause. It must be conceded that if he had driven elsewhere there would have been no jar from that obstruction; but also it must be seen that if the obstruction had not existed there would have been no jar. The cases, Cosgrove v. N.Y.C. H.R.R.R. Co. (13 Hun, 329); Barringer v. N.Y.C. H.R.R.R.Co. (18 id. 398) lend no support to his contention. There the defendant was not in fault and had omitted no duty. The accident occurred because Barringer could not control his horse; and both cases are put upon the ground that the defendant's negligence did not cause or contribute to the injury. If the request had been so qualified, a different question would have been presented. The learned counsel for the defendant asked the court to charge that "if the defect in the horse railroad tracks and planking caused the injury, the plaintiff cannot recover," and the court said: "Yes, if it is a defect *Page 255 
in the horse railroad that these parties are in no way responsible for." There was an exception; but it needs no discussion, for if a defect existed, and for it the defendant was responsible, they would be liable for any injury arising therefrom. The request was then made for a charge "that the defendant is not responsible at all for the horse railroad," and the court said: "Not for the condition of its rails, perhaps, but I decline to charge so; it might be held responsible for any defect in the crossing which was between the rails of the defendant's road. What I charge is that, no matter what may be the measure of care or the responsibility of the horse railroad, still the defendant, having its tracks there at this crossing, must keep the crossing between the rails in such a way as not unnecessarily to impair or render dangerous crossing over these tracks, although it may be the crossing over the track of both the horse railroad and steam railroad at the same place." To this the defendant's counsel excepted. There was, I think, no foundation in the evidence for such a request. It is clear that the accident occurred at the crossing, upon land occupied by the defendant and between its tracks. The duty of maintaining it in proper condition was a corporate duty, in no way limited or restricted by privileges granted to or obtained by others.
The city had a duty to perform. The street railroad also. An action might perhaps lie against either for the omission of duty leading to the death of the testator, but because this crossing had many guardians, the obligation upon the defendant was in no particular diminished. Whatever rights have been granted by statute or by ordinance to others, the duty of the defendant is paramount, and it owes obedience to the statute by which it came into existence. The evidence shows no act done by the street railroad. The planks at the crossing were placed and replaced by the defendant. The crossing was seen to by it after such manner as it chose, but in whatever manner without interference from the street railway or regard to it. We find also in the statute introduced in evidence by the defendant (Laws of 1862, chap. 223, § 3) relating *Page 256 
to that railway, a clause declaring that such company shall not "cross or run over the track of the New York Central Railroad Company, unless on terms to be agreed upon between the two companies," or "in case of disagreement between them," by the Supreme Court. We are not to suppose in the absence of proof that due provision has not been made for the protection of the defendant from the consequences of any act or omission on the part of the street railway. But however that may be, there is nothing in any statute to which our attention has been called, and there is no principle of law which relieves the defendant from the performance of a duty upon which the lives of citizens depend and which should be performed exactly and without abatement. It certainly could by no act of its own relieve itself from this duty and liability (Storrs v. City of Utica,17 N.Y. 109), and it has not been modified or dispensed with by the legislature. The license of the second corporation may have added another party to the negligent omission, but it did not release the defendant from the duty laid upon it by law, or transfer the consequences of its non-performance or negligent performance of that duty. The plaintiff might perhaps have had an action against the other or perhaps against both jointly. (Illidge v.Goodwin, 5 C. P. 190; 24 Eng. C. Law, 272; Lynch v.Nurdin, 1 A. E. [N.S.] 29; 41 Eng. C. Law, 422; Chapman v.N.H.R.R. Co., 19 N.Y. 341; Colegrove v. N.Y.N.H.R.R. Co.,
20 id. 492.) Upon the facts found by the jury, it was at all events well brought against the defendant.
The defendant's counsel also asked the court to charge that if this injury arose and was caused by the rails of the street railroad company, that is, if it was caused by the wheel getting between the plank and a loose rail of the street railroad, then defendant is not responsible.
The court: "If it was caused by the loose rail of the horse railroad company, of course your company probably would not be responsible for that, if it was in consequence of the rail."
No defect was shown to exist in the rails of the street railway *Page 257 
company. No one of them was shown to be loose. The difficulty was with the roadway and the planking. There was no foundation for the request made, and the charge given in answer to it was favorable to the defendant. But whatever duty was imposed upon the street railway company it did not relieve the defendant from liability for its own negligence, or for want of care in keeping up and maintaining the street in proper condition. If the street railroad has erred in the omission to perform any duty in respect to the crossing, the law gives a remedy, but the defendant is not thereby released from its obligations to keep the crossing safe for public travel. For the omission to perform those obligations the judgment appealed from has been rendered, and it should, I think, be affirmed.
All concur, except RAPALLO, J., absent.
Judgment affirmed.