JONATHAN CHAMBERLAIN, Respondent, v. THE TOWN OF WHEATLAND, Appellant.

*Supreme Court, Fifth Department, General Term, October 19, 1889.*

1. *Negligence. Imputed.*—The negligence of the driver of a public conveyance cannot be imputed to a passenger.

2. *Same. Per se.*—The driving of a balky horse in a public street is not negligence *per se.*

3. *Same. Question of fact.*—The facts in this case were held to warrant the submission of the questions of negligence and contributory negligence to the jury.

4. *Evidence. Expert.*—Where a witness has testified to all the facts from which the jury can draw the proper inference, it is not error to allow him to state his conclusion.

Appeal by the defendant from a judgment entered in Monroe county upon the verdict of a jury, at the circuit for $300 for personal injuries received by the plaintiff, and also from an order denying a motion for a new trial.

*George W. Forsyth*, for respondent.

*Joseph W. Taylor*, for appellant.

MACOMBER, J.—This action is brought in pursuance of chapter 700 of the Laws of 1881 by which a party is permitted to recover for personal injuries and for loss of property by reason of defective highways or bridges in the same manner as such actions theretofore could be maintained against highway commissioners.

The plaintiff with his wife and another person were passengers in a stage or public vehicle running from the Rochester & Pittsburg railroad station at Mumford, N. Y., for the accommodation of residents of that village and of those of the village of Caledonia, one mile south therefrom. At

about the time of leaving the station the off horse, which is sometimes spoken of in the evidence as a mustang, balked and was whipped by the driver, and at last with a plunge the team went forward towards the hotel in the village of Mumford where one of the passengers, one Mr. Tilley, was to alight. The driver pulled up to the platform of the hotel, and after discharging Mr. Tilley started on towards Caledonia. The same horse was again disobedient and refused to go, but shortly moved on at a rate of speed variously estimated by the several witnesses, and after going a distance of about sixty or seventy feet the stage was run upon a hummock in the highway, composed of frozen snow and ashes, where it was overturned and the plaintiff injured.

One of the grounds of the motion for a new trial, which is repeated on the argument upon this appeal, is that the verdict is against the weight of the evidence. From an examination of the testimony the fact is disclosed, as shown by several apparently credible witnesses, that this spot where the stage or wagon was overturned had been suffered to remain in a dangerous condition for a period of about ten weeks or three months. It is further shown that the hummock of ashes and frozen snow was from a foot to twenty-two inches in height, and was sufficient to overturn any vehicle rapidly going upon it. It was located within a distance of two to four feet from the rail surrounding a pump and well located within the highway and near to the west side of Main street, about twenty or thirty feet from the hotel in question. As the driver stood at the platform of the hotel where Mr. Tilley alighted, his horses were faced substantially to the south, in the direction of Caledonia. The traveled space between the inclosure of the well and the well was about fifteen feet, through which vehicles of this kind could readily pass. The course also to the left of the hotel and to the east thereof was equally open and available for the passage of vehicles for a distance between the well and east curb of fifty-seven feet. There was no imprudence on the part of the driver in

passing to the left of the well rather than to the right. The speed at which the team was at last started from the hotel southward was not, by any means, excessive ; it was no faster than the gait which would naturally be taken by a team where one of the horse had balked and at last had started forward somewhat impetuously.

In any event all of these matters were proper subjects for the consideration of the jury, and were submitted to them under an impartial charge, leaving the whole case to their judgment. It is also claimed on the part of the appellant's counsel that the plaintiff himself was guilty of negligence which contributed to the commission of the injury. It is shown, as above mentioned, that while at the railway station the off horse had balked and had received a severe whipping, and when the team went forward towards the hotel at Mumford it went on a run for some portion of the distance. Evidence was given that the wife of the plaintiff became a little nervous and wished to get out of the wagon, but that the plaintiff himself reassured her saying, in substance, that the driver was capable of managing, or competent to manage, the team. Whatever the experiences were in the ride from the railway station to the hotel, the same must be considered in that light of the fact that this was a public conveyance running for the accommodation of the citizens regularly between those two villages, over which the plaintiff had no control. There is no sufficient evidence that would have warranted the jury in finding that the plaintiff himself had reason to believe either that this horse was vicious, unruly and unmanageable, or that the driver was incompetent. Testimony was given by some witnesses to the effect that the animal which balked was not the regular stage horse, and was not commonly used for the conveyance of passengers. Under all of these circumstances it was a fair question for the jury to say whether the plaintiff, riding in a public conveyance without previous knowledge of the vicious character of the horse, and without notice of any incompe-

tency on the part of the driver, should be chargeable with any misconduct or want of care for his own safety which contributed to the injury, and their determination of that question, which was submitted to them as fairly as the defendant could properly ask the same to be, should be deemed to be conclusive.

Upon the principal questions, therefore, involved in this appeal, there seems to be no legal error committed at the trial.

Much stress, however, is placed by the counsel for the appellant upon the exceptions taken to the rulings of the learned judge at the circuit in receiving and rejecting evidence, and in refusing to charge certain requests made by him. The learned counsel for the appellant says in his brief that the court " was asked to charge that if the driver was unskillful or incompetent, and his manner of driving contributed to the injury, then the plaintiff cannot recover, provided he either knew or the circumstances were such that he ought to have known of the driver's incompetency." An answer to this proposition is that no such request was made by the counsel to the court. What the counsel actually requested the court to charge was as follows : " Also, if the driver was unskillful or incompetent, and his manner of driving contributed to the injury, the plaintiff cannot recover, provided he either knew or ought to have known that the driver was incompetent." This is a materially different proposition from the one discussed in the brief, and the court was wholly justified in refusing to charge it. The counsel also asked the court to charge " that if the horses were either of them balky or otherwise unmanageable it was negligence to drive them on a public vehicle." This was declined and an exception taken. There was no error in this refusal. There is no principle that would justify a trial court in instructing a jury that it was negligence to undertake to drive a balky horse in the public streets. It is also argued that it was error for the court to permit the witness, William

H. Adams, the driver of the stage, to say what it was that tipped the vehicle over. It is true that it was the province of the jury to determine what tipped the wagon over, but after giving the facts it was not error for the witness to be permitted to say that it was the pile of ashes that worked the mischief. It would not have been legal error to have sustained the objection to the question put to this witness, but on the whole we do not think that the question and answer were ground of error, inasmuch as the facts were stated by the witness from which the jury could draw the proper inference.

We have examined the other exceptions in the case and do not find in them any matter which would lead to a reversal of the judgment. By the answer interposed by the defendant, the fact that the plaintiff was a passenger in a public stage coach and was being conveyed as a passenger for hire is not only conceded, but affirmatively alleged. This averment renders quite unnecessary any extended discussion of the question whether any supposed negligence of the driver of the stage could be imputed to the plaintiff. Dyer *v.* Erie Railway Co., 71 N. Y. 228; Masterson *v.* N. Y. C. & H. R. R. R. Co., 84 N. Y. 247 and the cases there cited.

The judgment and order should be affirmed.

BARKER, P. J., and DWIGHT, J., concur.

NOTE ON " IMPUTED NEGLIGENCE."

In the absence of proof of an actual notice, in an action for negligence, the length of time necessary to impute knowledge, is a question for the jury. Paris *v.* Green Island, 61 Hun, 622.

The rule as to not imputing the driver's negligence to a traveler, does not apply, when he has same opportunity for discovering danger. Brickell *v.* N. Y. C. & H. R. R. R. Co., 120 N. Y. 290.

The negligence of the driver of a vehicle cannot be imputed to a mere passenger. Phillips *v.* N. Y. C. & H. R. R. R. Co., 127 N. Y. 657; Robinson *v.* Same, 66 Id. 11; Dyer *v.* Erie R. R. Co., 71 Id. 228; Bennett *v.* N. Y. C. &. H. R. R. R. Co., 61 Hun, 623.

---

Note on " Imputed Negligence."

---

The negligence of a person driving across a railway track is not imputable to his wife, who is riding with him. Hoag *v.* N. Y. C. &. H. R. R. R. Co., 111 N. Y. 199.

The negligence of the driver is not imputable to a person who is not the owner of the carriage nor the master of the driver, but only an invited passenger. McCaffrey *v.* Del. & H. C. Co., 62 Hun, 618.

Where a party was riding, at his own request and solicitation, and upon his own business, with another in the latter's conveyance, which the owner was driving so heedlessly and carelessly that the passenger, in the exercise of ordinary care should have perceived, but failed to do so or to remonstrate with the driver, he is chargeable with contributory negligence in driving across a railroad track and colliding with an approaching train. Smith *v.* N. Y. C. R. R. Co., 38 Hun, 33.

A person, who is gratuitously and voluntarily riding with another without any direction or control of the latter's team, is not responsible for his negligence, provided he is competent to conduct and manage the team, and there is no reason which the passenger could have discovered why he should not ride with him, or why he was not a proper person with whom to ride. Gaylord *v.* Syracuse, etc., R. R. Co., 23 W. Dig. 396.

A person who, while riding in a wagon with another party of the same employment, is conscious of the danger and risk assumed by the driver, and makes no objection or effort to avoid it, is chargeable with the negligence of such driver. Donnelly *v.* Brooklyn City R. R. Co., 109 N. Y. 16.

The negligence of a driver in crossing a railroad track cannot be imputed to one seated in his vehicle, where no act of the latter could have avoided the accident. Crawford *v.* D. L. & W. R. R. Co., 54 Supr. 262.

In Halsey *v.* R., W. & O. R. R. Co., 12 N. Y. St. Rep. 319, it was held that, in the case of an injury from a collision of a train with a team at a railroad crossing, the negligence of the driver of the team was, under the circumstances, not imputable to the injured party.

A passenger in a street car, who has no control or management of the vehicle, is not deprived of a right of action against an intersecting railway company for injuries caused by its negligence, by reason of the contributory negligence of the driver of such car. McCallum *v.* Long Island R. R. Co., 38 Hun, 569 ; Harvey *v.* N. Y. Woodhaven & R. E. R. Co., 21 W. Dig. 198.

Negligence is not imputable to a person whose sudden and instinctive efforts to escape impending danger, after receiving warning thereof, resulted in the accident. Quill *v.* N. Y. C. & H. R. R. R. Co., 16 Daly, 313.

Where a child is too young to be charged with personal contributory negligence in being run over by a wagon in the street, its mother's negligence, in sending or permitting it to go into the street unattended is imputed to the child. Dudley *v.* Westcott, 44 N. Y. St. Rep. 882.

Parents are obliged to protect a child from danger so far as it can be done by the exercise of reasonable prudence and care. Weil *v.* Dry Dock, etc., R. R. Co., 119 N. Y. 147. The father need not suspend his business and keep the child every moment under his eye. Id. He is required to exercise such a degree of care as is reasonable in his situation and under the

circumstances. Id. In the case cited, the question of imputed negligence, to bar an action for injuries to a young child, who had escaped into the street from her father's store but a short time prior to the accident, was held, under the circumstances, to be a question for the jury.

Where, in an action for negligently keeping defendant's premises in an unsafe condition, it appeared that the child for whose injury the action was brought, fell down some steps while under the care of an elder sister, a request to charge that, if the latter was negligent in caring for the child, a recovery cannot be had, was held to have been erroneously refused. Williams v. Gardiner, 58 Hun, 508.

In O'Neil v. Kinken, 55 Hun, 608, it was held that it is a question for the jury whether the mother is guilty of contributory negligence in allowing her three-year old child to go downstairs ahead of her without taking her hand.

In Weil v. Dry Dock, etc., R. R. Co., 57 Supr. 188, a complaint for personal injuries was held to have been properly dismissed, where a child two years old, who was being carefully watched by its parent, escaped his sight for only a few minutes and was run over and injured by a street car.

In Ames v. Broadway, etc., R. R. Co., 56 Supr. 3, it was held that, where a child, whose mother had given it permission to play about the door, crossed the street and was run over by a horse car, the mother's negligence was a question for the jury.