Turnpike Co. *v.* Yates.

TURNPIKE CO. *v.* YATES.

(*Nashville.* March 22, 1902.)

1. MOTION IN ARREST. *Maintainable after demurrer.*

A demurrer to a declaration does not preclude a motion in arrest on the same grounds, and *a fortiori* does not preclude motion in arrest on different grounds from those relied on in the demurrer. (*Post, pp. 429-431.*)

2. DECLARATION.

A declaration in an action against a turnpike company for an injury sustained by the plaintiff while passing through one of its gates, by the falling of a pole, is sufficient which avers the duty of the defendant to erect and maintain safe and suitable gates, "but that defendant failed, negligently, willfully, and wrongfully to do this," and that plaintiff, "by reason of such failure of duty on the part of defendant, was injured by the falling of a pole upon her head, body, and breast, while lawfully, and in the exercise of proper care and caution, was passing through one of defendant's gates," about eight miles from the city of Nashville, and under said pole raised by defendant's servant to enable her to pass. It is not essential to describe more specifically the location of the gate or to aver more specifically the defendant's negligence. The law implies negligence from the averment of the injury. (*Post, pp. 431-434.*)

Cases cited: Railroad *v.* Mitchell, 11 Heis., 400; Sommers *v.* Railroad, 7 Lea, 201; Young *v.* Bransford, 12 Lea, 237.

3. VERDICT. *For $2,500 sustained by the facts.*

The Court, upon the facts set out in its opinion, sustains a verdict of $2,500 against a turnpike company for an injury caused by the falling of a pole upon a traveler at one of its toll-gates. (*Post, pp. 434-437.*)

4. CHARGE OF COURT. *Refusal of request as to contributory negligence not cause for reversal, when.* .

Where there is no proof of negligence on the part of the plaintiff, the Court's refusal to give requests on that subject made by

Turnpike Co. *v.* Yates.

defendant does not constitute reversible error. (*Post, pp. 437, 438.*)

5. NEGLIGENCE. *Negligence of driver not imputable to his companion.*
Where a person, while riding in the carriage of another by invitation, is injured by the negligence of a third party, he may recover against the latter, notwithstanding the negligence of the owner of the carriage in driving his team may have contributed to the injury, where the injured person is without fault and had no authority over the driver. (*Post, pp. 438-441.*)

FROM DAVIDSON.

Appeal in error from the Circuit Court of Davidson County. J. A. CARWRIGHT, Sp. J.

J. C. McREYNOLDS for Turnpike Co.

Jo W. BYRNES for Yates.

McALISTER, J. Plaintiff below recovered a verdict and judgment before the Hon. J. A. Cartwright, Special Judge, and a jury, against the turnpike company, for the sum of $2,500 damages for personal injuries. The company appealed and has assigned errors.

The first assignment we will notice is that the Court erred in not sustaining defendant's motion in arrest of judgment. The substance of the motion was that the declaration sets out no facts showing negligence on the part of defendant, and

is wholly insufficient in law to warrant a recovery. It should be remarked that on the 11th of March, 1898, a demurrer was interposed to this declaration, but the only cause assigned was that it failed to show defendant had any right to own and operate a turnpike in this State, or to show for what purposes defendant was incorporated. The demurrer was sustained and the plaintiff was permitted to file an amended declaration. Thereupon the defendant filed a plea "of not guilty."

It has been held that after judgment on demurrer, there can be no motion in arrest of judgment for any exception that might have been taken on arguing the demurrer. *Indiana R. R. Co.* v. *Lampson,* 31 Ill. App., 513; Tidd's Practice, 918. But it has also been held that a motion in arrest for a fatally defective complaint may properly be sustained, even though a demurrer to such a complaint had been previously overruled. It is said that the Court, by ruling wrongly on a demurrer, does not preclude itself from afterward ruling rightly upon a motion in arrest of judgment. *Stewart* v. *Terre Haute R. R. Co.,* 103 Ind., 44; *Newman* v. *Perrill,* 73 Ind., 154; *Field* v. *Slaughter,* 1 Bibb (Ky.), 160; *Griffin* v. *Baker Co. Justices,* 17 Ga., 96.

It will be observed that the grounds now assigned in arrest of judgment are wholly different from the causes assigned on the demurrer, but

the weight of authority is that if all the same causes had been assigned in the demurrer, the Court would not have been precluded from sustaining the motion in arrest. If this is so, it must follow that where the particular cause assigned in arrest was not raised by the demurrer, the Court could, nevertheless, look to it on the motion.

The declaration in this cause contains three counts. It is only necessary to notice the second count, which is probably fuller and more explicit as a pleading than the other counts. It is alleged in this count that defendant, turnpike company, is a corporation duly chartered and organized under the laws of the State of Tennessee, and as such owns and operates a turnpike from Nashville to Ashland City, in Cheatham County. That for the purpose of collecting its tolls, it has at proper intervals along said turnpike constructed or erected gates or poles, which may be raised or lowered to allow travelers, who have paid their tollage, to pass thereunder; that it was the duty of defendant to provide safe and suitable gates or poles for such purpose, with due regard to the safety of those who might pass thereunder, and to maintain same in proper repair, but that defendant failed, negligently, willfully, and wrongfully, to do this, and plaintiff alleges that by reason thereof, on or about the 18th of July, 1897, and while she was lawfully

passing in a buggy along said turnpike, in David-
son County, about eight miles from the city of
Nashville, and after she had paid her toll, and
after the employe of the defendant had raised
said gate or pole for her to pass under, and
she had driven or passed thereunder, and while
she was exercising proper care and caution, said
pole fell, striking the plaintiff upon the head,
body and breast, knocking her senseless and great-
ly bruising and injuring her, etc.

It was assigned on the motion in arrest that
the declaration fails to specify any fact or facts
upon which a charge of negligence can be based,
or in what way defendant's gates were improperly
or negligently constructed, maintained, or operated,
or which one of its poles fell on plaintiff. As
already seen, the declaration alleges that the toll
gate in question was about eight miles from the
city of Nashville, and this, we think, was suffi-
ciently specific to inform the company what toll
gate was meant. Again, it was not necessary for
the plaintiff to point out the particular defects
in the toll gate that caused it to fall, or to
show wherein the company's servant was negligent
in its management. It was sufficient to allege
that the pole was permitted to fall on plaintiff's
head as she was in the act of passing there-
under. The very fact that the pole fell was
*prima facie* evidence of negligence. *Res ipsa lo-
quitur.* A presumption of negligence would at

once arise. It was the duty of the turnpike company, in collecting its tolls, so to manage its gates as not unnecessarily to injure the traveling public. The case of *Stokes* v. *Saltonstall,* 13 Peters, 190, illustrates the principle. In that case Saltonstall sued Stokes for an injury sustained by his wife, by the upsetting of a stage coach, in which she was passenger. The Court held that the facts that the carriage was upset and the plaintiff's wife injured were *prima facie* evidence that there was carelessness, or negligence, or want of skill on the part of the driver. This rule was recognized in *Railroad* v. *Mitchell,* 11 Heis., 400, but held inapplicable to the facts of that case. *Sommers* v. *R. R.,* 7 Lea, 201. In *Young* v. *Bransford,* 12 Lea, 237, which was an action to recover damages for the death of plaintiff's intestate, caused by the explosion of a steam boiler, the Court, in considering the question, said. "The reason of the rule is that the proof which establishes the injury, shows also circumstances from which some negligence or want of care may be attached to the wrongdoer," citing *Curtis* v. *R. R.,* 18 N. Y., 543, and *Holbrook* v. *Railroad,* 12 N. Y., 236.

In the case now being decided, we are of opinion a stronger rule applies than that laid down in *Young* v. *Bransford.* It is not only competent for the jury to infer negligence as a proposition of fact from the proof that the pole

24 P—28

was permitted to fall on a traveler, as she was in the act of passing through the toll-gate, but such proof raises a presumption of negligence against the company and shifts the burden of proof upon it to show that it. was guilty of no negligence. In this view the declaration clearly stated a cause of action, and the motion in arrest of judgment was properly overruled.

The next assignment is that there is no evidence to support the verdict. The defendant company owns and operates a turnpike between Nashville and Ashland City, in Cheatham County. The accident to plaintiff happened at the company's first toll-gate, about eight miles from the city of Nashville. The toll-gate keeper at that time was an old man about eighty-three years of age. The toll-gate consisted of a pole about twenty-eight feet in length, six inches in diameter at one end, and two and one-half inches at the other end. The larger end was set in a fork on the side of the pike, and twenty-two feet of the pole extended across the pike to the toll-gate house, where it was secured by a goose-neck in the end of a post. The remaining six feet of the pole extending back of the fork had attached an iron cylinder or cog-wheel, weighing, as variously estimated, from twenty-five to thirty-five pounds. This weight and six feet of the pole back of the fork being heavier than the twenty-two feet extending across the pike, raised the pole when

the small end was freed from restraint. The pole was thus raised and lowered by means of a rope, used by the gate-keeper. The iron weight or cog-wheel, with an opening in its center, was slipped on over the short end of the pole back of the fork, and in 1894, when first attached to the pole, was secured by wooden wedges driven in between it and the pole. Nails were driven behind this cog-wheel to prevent it from slipping from the pole when the latter was raised.

It appears that on July 18, 1897, plaintiff started to Nashville with one A. J. Howington, with whom she lived as housekeeper. Howington was driving and sitting on the right side of the buggy next to the toll-gate house. The plaintiff, Mrs. Yates, was seated on the left side of Howington, nearest the fork of the pole. As they approached, the toll-gate keeper let the pole up rapidly, and, just as they were passing under, the pole fell, striking Mrs. Yates on the head and breast. An examination made soon after showed that the nails used to hold the iron weight had become pressed back, and that the iron weight had slipped over them and fallen to the ground, thus causing the pole to fall and inflicting the injuries. There was proof tending to show that the toll-gate keeper and the officers of the company did not inspect the weight at any time after it was put on; that in 1896, during Christmas, the pole and weight were carried off by

some mischievous boys and left in the turnpike, about forty yards below the toll-house; that it was recovered, and in putting the weight back on the pole, the same old spikes were used.

It appears to have been the duty of Murphy, the toll-gate keeper, and Moore, Superintendent of that particular section of the pike, to look after the pole.

Moore testified that he put the weight on in 1894, and would notice it as he passed on his way to town in his buggy, but did not examine it. Mr. Lewis, the General Superintendent of the road, stated that he would glance at the pole as he passed along the pike, but made no examination of it.

The theory of the company was that, as the plaintiff and Howington approached the toll-gate, both of them noticed that the pole was down horizontally across the road, and they saw Murphy standing there ready to let it up; that no effort was made to stop the horse, which was driven in a trot right up to the pole, when Murphy, seeing who they were, and that a collision was about to occur, undertook to let the pole up rapidly. The large end of the pole struck the ground with force and the weight fell off. Plaintiff not having stopped or tried to procure a stop, was drawn instantly under the pole, which, being freed of the weight, fell and struck her. It is insisted on behalf of defendant that it

exercised great care and prudence in the construction and maintenance of this pole, and that no servant or agent of the company had any notice that the same was dangerous or out of repair. That the construction was of an approved kind and regarded as in every way good, and the proof fails to show there were any defects known or that a critical examination would have revealed any prior to this accident. It is insisted, moreover, that Lewis and Moore, superintendents of the company, examined the road and poles frequently and found no defects. Upon the facts, the jury, as already stated, returned a verdict in favor of plaintiff for $2,500.00. The case has been three times tried. On the first trial there was a verdict for $750.00, and plaintiff having refused to enter a remittitur of $350.00, a new trial was awarded. The second trial resulted in a verdict for $1,400, which was also set aside because plaintiff refused to reduce it to $500. The third trial resulted as already stated, in a judgment and verdict for $2,500. There is ample evidence to support the verdict of the jury, and the second assignment must be overruled. Among other supplemental requests submitted by counsel for the company the Court was asked to charge, viz.: "Any negligence of which you may think the plaintiff was guilty, and which contributed in any way to the accident or its bad results, may be considered by you in determining

the amount of damages, and in mitigation of the sum which you might otherwise award to plaintiff." The only instruction given on the subject of contributory negligence was that if plaintiff attempted to pass through the gate before the gate-keeper had a reasonable opportunity to raise the pole, and that by reason of that attempt the pole fell down, without carelessness or negligence upon the part of the gate-keeper, plaintiff would not be entitled to recover.

There was no proof on the trial below tending to show that Mrs. Yates, the plaintiff, was guilty of any negligence. As already stated, she was not driving, but had accepted a seat in the buggy, at the invitation of Mr. Howington, to accompany him to the city to visit his sick daughter. It was insisted below that plaintiff and Howington did not stop or attempt to stop the horse when they reached the toll-gate, and the gate-keeper was compelled to let up the gate rapidly and violently to prevent a collision of the horse with the pole. It was insisted that if plaintiff and her driver caused the action of the gate-keeper by their imprudence and recklessness, she cannot complain; that if she and the driver saw the impending danger, and rushed into it, she must take the consequences. But, if there was any negligence shown, it was that of Howington, the driver, and his negligence cannot be imputed to the plaintiff, Mrs. Yates.

Mr. Cooley, in his work on the Law of Torts, Sec. 823, states the rule thus: "In general, the negligence of third parties concurring with that of defendant to produce an injury is no defense; it could at most only render the third party liable to be sued as a joint wrongdoer. But in some cases where the person injured was for the time being with and under the direction of the third party, whose negligence concurred in producing the injury, this negligence has been held a bar to any recovery. In the leading English case (*Bryan* v. *Thorogood*), the plaintiff, in alighting from a public omnibus, was knocked down and injured by an omnibus belonging to the defendant. The case was put to the jury under instructions that if it was found that the driver of each omnibus was guilty of negligence, contributing to the injury, the plaintiff was not entitled to recover, he being so far identified with the driver of the omnibus he was riding in, that he must be considered a party to the negligence. The like rule has been frequently laid down in this country, but in several States its soundness is denied. In New Jersey it is held that the negligence of a driver of a street car in which the plaintiff was riding is not to be imputed to the plaintiff as a bar to an action for the injurious negligence of a third party, and in the United States Supreme Court, and some of the other States, a like rule has been made. The English Court of Appeals

has recently overruled *Thorogood* v. *Bryan* in so far as it applies to a public conveyance."

"The true principle seems to be that when a person is injured ·by the negligence of the defendant, and the contributory negligence of one with whom the injured person is riding as a guest or companion, such negligence is not imputable to the injured person; while, on the other hand, it may be imputable when the injured person is in a position ·to exercise authority or control over the driver." A. & E. Ency. Law, Vol. 7, p. 448.

In the case of *Union Pacific R. R. Co.* v. *Lapsley,* 51 Fed. Rep., 174, this question was considered. That was a suit by an administrator for the wrongful killing of his intestate. The deceased was riding home with her brother in an open wagon, with the brother driving; she had been invited to ride by the brother. Says Sanborn, Cir. J: "So that the case sharply presents the question whether one who, while riding gratuitously in a carriage owned and driven by another, is injured by the concurrent negligence of a third person and the driver, over whom he has no control, is barred from recovering compensation for the injury from the former by the contributory negligence of the owner and driver of the team. With the single exception of the Supreme Court of the State of Wisconsin, which had been committed to the doctrine of *Thorogood*

v. *Bryan,* prior to 1886, the State Courts have uniformly held that one who, while riding in the private carriage of another, at his invitation, is injured by the negligence of a third party, may recover against the latter, notwithstanding the negligence of the owner of the carriage in driving his team may have contributed to the injury, where the person injured is without fault and has no authority over the driver." Citing *Fallman* v. *City of Mankato,* 35 Minn., 522; *Borough of Carlyle* v. *Brisbane,* 113 Pa. St., 544; *Robinson* v. *R. R. Co.,* 66 N. Y., 11; *Dyer* v. *R. R. Co.,* 71 N. Y., 228; *Masterson* v. *R. R. Co.,* 84 N. Y., 247; *Arddy* v. *Horn,* 46 Mich., 596; *Transfer Co.* v. *Kelly,* 36 O. St., 87; *R. R. Co.* v. *Eadie,* 43 O. St., 91; *Bennett* v. *N. J. R. & T. Co.,* 36 N. Y. L., 225; *R. R. Co.* v. *Shackett,* 105 Ill., 864; *Little* v. *Hatchett,* 116 U. S., 336.

It is also assigned as error that the verdict is excessive. But we find nothing in this verdict indicating that the jury were swayed by prejudice, partiality, caprice, or corruption. Two verdicts in favor of the plaintiff have already been set aside upon the facts, and we are now precluded by the statute against interference with this verdict.

The charge of the Court is a correct presentation of the issues, and contains no reversible error. Affirmed.