## ILLINOIS CENT. R. CO. v. SIGLER.
## SAME v. BERRYHILL.
### Nos. 8638, 8639.

Circuit Court of Appeals, Sixth Circuit.
Aug. 15, 1941.

Larry Creson, of Memphis, Tenn. (Evans, Evans & Creson, Clinton H. McKay, Lucius E. Burch, Jr., and Greenfield Polk, all of Memphis, Tenn., of counsel), for appellant.

W. P. Armstrong, of Memphis, Tenn. (Kenneth Larkey, Charles G. Morgan, John W. Gibson, and Armstrong, McCadden, Allen, Braden & Goodman, all of Memphis, Tenn., of counsel), for appellees.

Before HICKS, ALLEN, and HAMILTON, Circuit Judges.

HICKS, Circuit Judge.

These actions for damages for wrongful death brought against the Illinois Central Railroad Company, appellant (herein called the Railroad Company), were consolidated for trial. In the Sigler case, the suit was by deceased's widow for the benefit of herself and minor children, and resulted in a verdict of $10,000; and in the Berryhill case the suit was by deceased's administratrix for the benefit of his mother as next of kin and resulted in a verdict of $7,500.

From judgments upon these adverse verdicts the Railroad Company appeals and complains (1) of denial of a directed verdict; (2) of the admission of certain evidence; (3) of the charge of the court in various particulars; (4) of the refusal to give certain requests in charge to the jury; and (5) of certain other alleged errors.

On the morning of May 5, 1939, Sigler and Berryhill were passengers in a Ford coupe driven by Andrew Oglesby. About 7 a.m. they were going east on the main street of the incorporated town of Millington, Tenn., and drove on to the railroad crossing, where the car was struck and demolished by appellant's southbound train No. 15, known as the Chickasaw, and the three occupants were killed. There was testimony tending to show that Sigler, who was riding on the outside, had opened the car door and was trying to get out at the instant of the collision. With this exception all the evidence bearing upon the question of negligence and contributory negligence applied equally to Sigler and Berryhill; and the questions presented by the two appeals are identical.

The complaint contained two counts,— the first, charging the Railroad Company with common law negligence; and the second, with violations of Section 2628(3) and (4) of the Code of Tennessee of 1934.

The Railroad Company denied the allegations of negligence, and that it had failed to comply with the statutes; and averred that the decedents were guilty of specific acts of contributory negligence.

The undisputed evidence tended to show that Millington was a town of around 700 people, situated about 18 miles north of Memphis; that its main street crossed the tracks of the Railroad Company on grade, the street running east and west and the tracks north and south. The southbound track was on the west and was of course the first track to be crossed by eastbound vehicular traffic. There was a spur north of the roadway and west of the southbound track, which branched off from a switch located just north of the intersection. A line of telegraph poles paralleled the tracks on the west. The intersection was unprotected by either a gate or a watchman. To the west of the tracks upon which the main part of the town lay, the intersection was marked by a post, on the north of the roadway, bearing crossed white boards with the painted legend, "Look out for the cars when you hear the whistle or bell." Also, on the west of the tracks and south of the roadway was a mechanical signal, consisting of a metal post ten or twelve feet high, with a bell on its top, and a flat metal ring projecting from the post with an opening in the center into which a warning disk of red was designed to drop. When operative, the bell and visual signal were actuated automatically when a train reached a point 3,600 feet north of the intersection and rang and remained in the warning position, respectively, until the train had passed the intersection. This post also bore crossarms. This signal was knocked down and destroyed in the accident. Along the roadway on the south and just west of the tracks was the E. A. Harrold Department store. Across the tracks therefrom was the depot and across the roadway to the north of Harrold's and also west of the tracks was the postoffice.

Along the tracks to the north of the postoffice was the back of a garage and north of that a gin. It was generally agreed that 20 to 25 trains passed through Millington daily. Several of these were passenger trains, which did not stop, and it was customary for them to go through at high speed. The Chickasaw was a nonstop train and on the morning of the accident was 16 or 17 minutes late. There was substantial traffic across the intersection, especially in the morning. Estimates of the number of crossings varied from one every five minutes to an actual count of 63 vehicles between the hours of 7 and 8 a.m.

Appellees produced several witnesses.

Jesse Crenshaw, an eye witness from across the tracks, testified that the car approached the track at a speed of 21 to 22 miles per hour and appeared to be trying to stop; that he did not hear the bell on the warning signal nor did he hear any blasts from the locomotive except three short whistles when it was 15 or 20 feet from the crossing, just before it hit. He testified that he was of normal hearing and that he knew it did not blow before that. He estimated that the train was running 80 to 85 miles per hour and struck about the motor of the car. He stated there were some cars on the siding at the time of the accident, and some hedges and willow bushes along the postoffice, which prevented a view to the north until one got within 3 or 4 feet of the railroad; that the obstructing willow tree was 8 or 10 feet west of the southbound track and 12 or 14 feet north of the street and was cut down on the day of the accident. He testified also that a telephone pole tended to interfere with a view of the mechanical signal we have described.

Sam Wiggins, for appellees, testified that he was standing at the depot and that the train was going 70 or 80 miles an hour; that the train blew three short blasts and the third time it blew it hit the car; that the train did not whistle nor the bell ring prior to that time. On cross-examination he stated that there were some bushes between the postoffice and the railroad and also "kind of behind the postoffice." He refused to estimate the distance of the bushes from the tracks or road but estimated them to be six feet high. On direct examination, he stated that he didn't hear the signal bell, but on cross-examination he stated positively that it was not working at the time.

Rufus Archer was also standing at the depot. He testified that Oglesby was looking south when he pulled up on the track at about 15 miles per hour, and that the train was then about 40 feet away; that it whistled twice and hit him and that it was running 75 to 80 miles per hour. He testified that the shrubbery to the north was about 10 feet high, and about 10 feet north of the street and 4½ feet from the railroad; that he noticed some box cars on the spur within 45 minutes after the accident.

Quincy Condar was following the Oglesby car in another car. He was not sure whether Oglesby stopped before he drove upon the tracks, but testified that he was driving slowly. He didn't know if the signal was working. He remembered no shrubbery but recalled the telegraph pole. He heard the train whistle only twice before the accident. He made no estimate of the speed, other than that it was fast. On cross examination he testified that, approaching the crossing signal from west to east "it was in sight."

Lonnie Armstrong was standing near the depot, about twenty steps from the crossing signal. He did not hear it. He testified that the car was coming about ten miles an hour and that when the train was 100 feet away, it whistled twice. He did not hear it blow before. The car made a quick stop on the track, when the train, with an estimated speed of 80 to 85 miles per hour, was only 50 feet away. This witness thought that Oglesby had to be within 6 or 8 feet of the track before he could get a view to the north.

Monn Montgomery, standing on the east side of the tracks, noticed the train when it was 100 yards north of the intersection and estimated that it was coming 80 miles per hour. He testified that it blew but twice before the collision. He had ridden in Oglesby's car about two weeks before the accident and he stated that it had good brakes and had been inspected by the proper authority. He further testified that a willow tree stood north of the postoffice and that by reason of the willow and a line of telegraph poles one would have to be within 6 feet of the track to see the train.

Daniel McWilliams, following Oglesby in Condar's car, said that Oglesby was driving about 20 miles an hour and slower as he came to the crossing, and came to a standstill on the track. McWilliams was listening but did not hear or notice the signal or hear the train bell. He did not hear the train whistle until it blew two short blasts just as it struck the car. He testified that Oglesby went to work regularly and that the train always passed ten to twenty minutes prior to his customary time of crossing. He estimated that the train was going 80 miles an hour. He said that an L-shaped hedge, and telegraph poles, prevented a good view of an approaching train until the front wheels of the car were going on the track. He also testified that a telephone pole cut off the view of the warning signal.

V. L. Sawyer, standing near the depot, heard the train "blow way up the track there one time," but heard no blasts at the time of the collision. He said that the train "was going about as fast as I ever saw one run." He did not hear the crossing bell, but stated that it could have been ringing.

Leonard Wade testified that he was standing at the east side of the tracks, south of the road, and first heard the roar of the train and that it had not whistled except three short blasts as it hit the car, and the crossing bell did not ring. He thought the train was going 70 to 80 miles per hour. The engine bell was not ringing. He said a hedge 12 to 15 feet high, and telegraph poles, interfered with the view north. The hedge was about center of the postoffice and across the ditch fom the main line. He said that there was a willow tree 25 yards north of the street and between the spur and main line.

All of these witnesses were, like the three men who were killed, employed by the W.P.A. It was their practice to report at the W.P.A. office east of the railroad tracks each morning before going to work. Many of the men rode to work in cars and like Oglesby had been in the habit of making the crossing regularly. All of these who testified estimated the train ran a mile or more beyond the crossing before coming to a stop after the accident.

There was also testimony of several witnesses, admitted over objection, that there had been two or three other accidents at the crossing in which automobiles had been hit.

█ Such, in the main, was appellees' case, to be considered by the court upon the motions for a directed verdict. There was of course contradictory and conflicting evidence, but such is of no concern in determining the motions. Gunning v. Cooley, 281 U.S. 90, 94, 50 S.Ct. 231, 74 L.Ed. 720; Minneapolis, St. P. & S. S. M. Ry. Co. v. Galvin, 6 Cir., 54 F.2d 202, 203. We think the motions were properly denied.

First, as to the common law count.

█ There was substantial evidence that the crossing involved was a much travelled one; that the signalling device was not operating; that no watchman was kept at the crossing, and no gates maintained on either side thereof and that bushes and hedges as well as cars on the siding and a line of telegraph poles tended to obstruct the view from the roadway toward the north. Appellant contends that photographs taken on the day of the casualty completely refute the testimony with reference to these intervening objects. An examination of these photographs leads to the conclusion that this was not true as a matter of law. There is ample affirmative evidence that the engine whistle did not blow nor its bell ring until a moment before the collision; and even testimony that the whistle or bell was not heard by witnesses who were in a position to hear, was admissible. Tennessee Cent. R. R. Co. v. Page, 153 Tenn. 84, 89, 282 S.W. 376; Hales v. Michigan Cent. R. R. Co., 6 Cir., 200 F. 533, 536; Begert v. Payne, 6 Cir., 274 F. 784, 789.

█ We think that there was adequate evidence to support a finding, that it was negligence to operate a train over this particular crossing, located in a thickly settled community, at the rate of speed the Chickasaw was running (see Stem v. Nashville Interurban Ry., 142 Tenn. 494, 507, 221 S.W. 192 and cases there cited) with no warning except the sight and roar of the train itself, and that such negligence was the proximate cause of the death of Sigler and Berryhill.

█ There was no evidence of contributory negligence. Nobody testified as to what went on in the Oglesby car as it neared the crossing. Even on the assumption that the signaling device was working and that the locomotive was sounding its whistle or bell, there is no proof that decedents did not warn Oglesby and try to stop him. We have already noted that Sigler was trying to escape at the moment of the accident. On the assumption that Oglesby was negligent, his negligence cannot, in Tennessee, be imputed to Sigler and Berryhill. Knoxville Ry. & Light Co. v. Vangilder, 132 Tenn. 487, 492, 178 S.W. 1117, L.R.A.1916A, 1111; Turnpike Co. v. Yates, 108 Tenn. 428, 438, 67 S.W. 69. The question of contributory negligence was peculiarly one for the determination of the jury. Tennessee Cent. Railroad Co. v. Vanhoy, 143 Tenn. 312, 226 S.W. 225.

Second, as to the statutory count.

This count is based upon Sec. 2628(3), which reads in part as follows: "Bell or whistle to be sounded when approaching or leaving a city or town.—On approaching a city or town, the bell or whistle shall be sounded when the train is at the distance

of one mile, and at short intervals till it reaches its depot or station. * * *"

Under the decisions of the Supreme Court of Tennessee this statute is applicable to incorporated towns (Railroad Co. v. Collier, 104 Tenn. 189, 54 S.W. 980) and to through trains. Southern Ry. Co. v. Griffin, 129 Tenn. 558, 167 S.W. 688. It is therefore applicable here and the burden of showing that its provisions were observed was upon the Railroad Company. See Williams Code, Sec. 2630. The statute (Williams Code, Sec. 2629) further provides that, "Every railroad company that fails to observe the above precautions, or cause them to be observed by its agents and servants, shall be responsible for all damages to person or property occasioned by, or resulting from, any accident or collision that may occur."

Again, Sec. 2630 of the same Code provides, that "No railroad company that observes, or causes to be observed, these precautions shall be responsible for any damage done to person or property on its road."

Appellant introduced evidence tending to show the observance of the statute, but, as pointed out in the discussion touching the common law counts, there was substantial evidence that the statute was not observed. Contributory negligence, if any existed, does not bar a recovery for liability under the statute but must be taken into consideration by the jury in mitigation of damages. This proposition is well understood and needs no citation of authority to support it.

Moreover, it is not essential to recovery that it be shown that nonobservance of the statute was the proximate cause of the collision. Railroad Co. v. Davis, 104 Tenn. 442, 450, 58 S.W. 296.

Appellant complains of alleged error in the admission of evidence of other collisions at the crossing between trains and motor vehicles. This question was considered by us in Evans v. Erie R. Co., 6 Cir., 213 F. 129, 133. Such evidence was held admissible not only to show the dangerous character of the place but also to show that knowledge thereof had been brought to the attention of those responsible therefor. This seems to us to be sound and has been followed in Tennessee in John Gerber Co. v. Smith, 150 Tenn. 255, 264, 263 S.W. 974.

Appellant complains of alleged errors in the court's general charge. These are not reviewable because no exceptions were taken to the parts of the charge complained of. Chapman & Dewey Lbr. Co. v. Hanks, 6 Cir., 106 F.2d 482, 485; see also Federal Rules of Procedure, Rule 51, 28 U.S.C.A. following section 723c. This rule also applies to the special instructions given at the request of appellees, to which appellant took no exceptions.

The court refused to give in charge certain requests presented by appellant. We confine our consideration to those discussed in the brief.[1] See Kahn v. United States, 6 Cir., 20 F.2d 782.

Request No. 7 is substantially covered by the general charge with the exception of that portion relating specifically

---

[1] Req. No. 7. "I charge you that if you find that the deceased was guilty of contributory negligence which proximately contributed to his injuries, such negligence bars any recovery under the common law count. Under the statutory count you must consider such contributory negligence in mitigation of the damages, and under the statutory count you may in your discretion on account of such contributory negligence return a verdict for nominal damages; that is, some nominal amount such as $1.00 or $10.00."

Req. No. 4. "The failure of the driver of the automobile to stop between 10 and 50 feet of the track as required by the statute constituted gross contributory negligence, and unless you find from the preponderance of the evidence that deceased warned the driver or protested to him for his failure to stop, they were likewise guilty of gross contributory negligence."

Req. Nos. 15 and 16. "If you believe from the preponderance of the evidence that the crossing signal was not operating at the time of the accident, I charge you that its failure to so operate does not constitute an independent ground of recovery.

"If you believe that the crossing signal was not operating, or if you believe that the signal was inadequate, insufficient and not up to the standard of railroading, yet I charge you that such will not constitute an independent ground of recovery."

Req. No. 20. "I charge you that the speed of the train, standing alone, does not constitute an independent ground of negligence."

Req. No. 23. "I charge you that actionable negligence constituting a ground of recovery cannot be predicated upon obstructions to the view alone, no matter whether erected or maintained by the

to nominal damages. It was not error to decline a request embracing that feature. Tennessee Cent. Railroad v. Binkley, 127 Tenn. 77, 153 S.W. 59.

■ Request No. 4 did not state the law accurately. Section 2683 of the Code of Tennessee, 1934, simply requires a driver to stop (1) if a signal gives warning of a train; or (2) if the Highway Department has marked it as a dangerous crossing. This request, if given, would have led the jury to believe that a stop was required even though there was no signal.

■ It was not error to decline special requests Nos. 15, 16, 20, 21 and 23. These requests, considered together, singled out various features touching appellees' case, especially upon the common law count, to wit,—(1) whether the crossing signal was operating; (2) whether it was adequate; (3) the speed of the train; (4) the absence of a flagman or gates; and (5) the alleged obstructions to view; and sought, an instruction that each of these elements taken alone did not constitute an independent act of negligence.

In Perovich v. United States, 205 U.S. 86, 92, 27 S.Ct. 456, 458, 51 L.Ed. 722, the court said: "Singling out a single matter and emphasizing it by special instruction as often tends to mislead as to guide a jury. * * * It is merely one link in a long chain, and the court is seldom called upon by special instructions to single out any single link in a chain, and affirm either its strength or weakness."

See, also, Carpenter v. Connecticut Gen. Life Ins. Co., 10 Cir., 68 F.2d 69, 73; Gulf Compress Co. v. Insurance Co., 129 Tenn. 586, 167 S.W. 859.

The gravamen of the complaints was that all of these possible elements of negligence taken together, and not singly, constitute their case and the requests, if given, would have tended to segregate, in the minds of the jury, matters which bore on the larger questions of due care.

■ We think request No. 17 was adequately covered in the following paragraph of the general charge: "The law presumes, gentlemen of the Jury, that a witness who is placed under oath has sworn truthfully; but, if the Jury does not believe his testimony they are not bound to. You simply start with that presumption. However, if the witness' testimony is inconsistent, or if it appears that a witness has on some former occasion made a statement that does not gibe with his testimony, you should consider that—cautiously, however, because the witness who is assailed may not have expressed himself accurately or fully on the former occasion; and, the contradicting witness may not have remembered correctly, or understood exactly what the assailed witness said."

■ It was not prejudicial to decline requests Nos. 2 and 30. The substance of these requests is that upon the findings of fact therein indicated, the decedents would have been guilty of contributory negligence as a matter of law. We have heretofore

---

railroad company or by some one else with its knowledge, nor can actionable negligence be predicated merely upon the speed of the train apart from surrounding conditions and attendant circumstances."

Req. No. 17. "I charge you that the testimony of any witness which is shown by the physical facts and surroundings to be absolutely untrue or so inherently improbable that no reasonable person can accept it as true or possible, may be disregarded by you. If, therefore, you find from the physical facts in this case that the occupants of the automobile had a clear and unobstructed view of the train approaching from the north while said automobile was at a distance of 18 feet or less from the crossing, then you may disregard the testimony of any witness that the view of a train approaching from the north was obstructed within that distance of the track."

Req. No. 2. "I charge you that if you believe that the crossing signal was operating at the time the automobile in which the deceased were occupants approached the track, there can be no recovery under the first count or common law count of plaintiff's declaration."

Req. No. 21. "I charge you that the fact that the crossing involved was not protected by a human flagman or gates would constitute at most a fixed condition apparent to any traveler before he reached a place of peril and would not, standing alone, constitute an independent act of actionable negligence or ground of recovery."

Req. No. 30. "I charge you that if you believe that the view of the occupants of the car to the north was obstructed, nevertheless if you further believe that the crossing signal was operating then the occupants of the car are charged with knowledge of the approach of the train."

pointed out that the question of contributory negligence was peculiarly one for the jury.

It was not reversible error for the court to read the pleadings to the jury or to instruct the jury to read them. This action of the court was not excepted to and was wholly discretionary and there is nothing to indicate that the court's discretion was abused. See Chicago & E. R. Co. v. Ohio City Lbr. Co., 6 Cir., 214 F. 751, 756.

We find no reversible error upon the record and the cases are therefore affirmed.