Marion **JABLONOWSKI**

v.

**UNITED STATES of America.**

**Civ. A. No. 25380.**

United States District Court
E. D. Pennsylvania.

May 26, 1964.

Alfred Sarowitz, David S. Shrager, Donald J. Farage, Philadelphia, Pa., for plaintiff.

Drew J. T. O'Keefe, U. S. Atty., Isaac S. Garb, Asst. U. S. Atty., Philadelphia, Pa., for defendant.

GRIM, Senior District Judge.

Following an adverse verdict in the sum of $100,000 in this Federal Tort Claims Act case, the government defendant has filed motions for judgment in its favor or a new trial as well as motions to amend the findings of this court which sat without a jury.

Plaintiff was injured while helping to unload a railroad boxcar containing a cargo of heavy wooden-crated steel lockers. The lockers were packaged in crates which were 89½" high, 36¼" wide and 6½" deep. Each crate weighed 278 pounds. In loading the boxcar, some of the crates were placed flat on their 89½" by 36¼" faces and some were placed edgewise on their 89½" by 6½" sides. However, sixteen of the crates were placed in a row at one end of the boxcar standing upright on their 36¼" by 6½" bases like "books on a shelf." Each of these sixteen crates rested on two 6" by 3½" cleats, one under each end of the crate. These sixteen crates standing upright extended from one side of the boxcar to the other.

These crates were supported in place at each end of their row by the side walls of the boxcar. In addition each of these sixteen crates was supported in place by

.. 

the back and wall of the boxcar and by the sides of the adjacent standing crates. The other flatsided or edgewise loaded crates which were placed in the remainder of the boxcar also supported these sixteen crates standing upright at the end of the boxcar and prevented them from falling toward the middle of the boxcar. However, when these other crates were removed, one of the supports for the sixteen crates was lost and nothing remained to prevent the sixteen crates from falling in the direction of the middle of the car.

The boxcar in question had been transported from Lewisburg, Pennsylvania, to the premises of Northern Metals Company in Philadelphia, for unloading. Plaintiff was employed by Northern Metals Company and together with two fellow employees was ordered to unload the boxcar. At the time of the accident, all the crates in the boxcar had been removed with the exception of about eight of the sixteen crates which had been standing upright at the end of the car. The procedure employed in unloading these sixteen crates was to lower one crate at a time onto its 89½" by 6½" side, lift it onto rollers and move it on the rollers to the door of the boxcar where a fork lift truck carried it to its destination. One of these crates had been so lowered onto its 89½" by 6½" side and placed on the rollers. Plaintiff with his back toward the rest of the standing crates, now unsupported in his direction, started to push the crate on the rollers toward the door when one of the remaining standing crates fell upon him causing severe injuries for the recovery of which this suit has been brought.

No one saw the crate fall and there is no evidence in the record as to what caused the crate to fall. However, there was evidence of a certain amount of vibration in the car at or about the time of the unloading of this crate and probably this vibration precipitated the fall of the crate, although no finding of fact has been made as to what actually caused the fall.

The crated lockers were loaded on the boxcar at the federal prison in Lewisburg, Pennsylvania, and shipped through Pennsylvania to the premises of plaintiff's employer in Philadelphia, Pennsylvania, where the accident occurred. Pennsylvania law must be applied. 28 U.S.C.A. § 1346(b). See Richards v. United States, 369 U.S. 1, 82 S.Ct. 585, 7 L.Ed.2d 492 (1962).

There seems to be no Pennsylvania case squarely in point in reference to the legal principle involved in the present case. However, in Kunkle v. Continental Transp. Lines, Inc., 372 Pa. 133, 92 A. 2d 690 (1952), a consignor used a trucking firm to transport a large machine. The consignor in loading the truck placed the heavy machine on the left side of the trailer without placing any comparatively weighty cargo on the other side of the truck to balance the load. As a result, the truck rolling along the highway capsized, causing the driver to be injured. The Pennsylvania Supreme Court upheld a jury verdict in favor of the truck driver against the consignor because of the improper loading. It seems that the same principle would apply if an employee of a consignee should be injured in Pennsylvania because of improper loading of a trailer truck by a consignor. Likewise, it seems that Pennsylvania law would permit recovery by an employee of a consignee when the employee is injured because of improper loading of a railroad freight car by a consignor. The legal principle is stated in 13 Am.Jur.2d Carriers § 320 at 815:

"* * * [A] shipper of goods by common carrier who undertakes to load the shipment is under a duty to exercise reasonable care to do so in a manner reasonably safe for unloading, and a violation of this duty will render the shipper liable for personal injury to or death of the consignee or his employee proximately caused thereby, if the person injured or

killed was entitled to do the unloading and was in the exercise of proper care for his own safety * * *."

It should have been obvious to any consignor exercising reasonable care in loading the boxcar in the present case that there would be danger to the employees of the consignee because of the shape and weight of the crates in which the lockers were placed. Standing on end on a base 36¼" by 6½" and almost 7½ feet high and weighing 278 pounds they would have no support in the direction in which men would be working after part of the cargo had been removed. It should have been obvious to a consignor exercising reasonable care toward the men who were to unload the cargo that one of these heavy crates might fall and injure a person unloading the cargo when he was not looking. The consignor, exercising reasonable care, could have and should have done something about this danger. According to the testimony of plaintiff's expert witness, the crates at the end of the car could have and should have been secured in place by the consignor to protect employees of the consignee by driving nails on an angle through the edge of each crate and into the wall of the boxcar. Also the unloading could have been made safe by banding together the sixteen crates at the end of the car in a fashion described as "snaking" which involved the interwinding of metal banding around each crate, the binding being stapled alternately to the outside edge of the crate and to the rear wall of the boxcar.

The defendant has admitted that on the day it loaded the boxcar and for a year previously its employees "used blocking, bracing, and/or stripping to secure shipments of equipment identical or similar to the metal lockers involved in the accident." It is further admitted that defendant "had readily available the equipment and personnel necessary for bracing, stripping and/or blocking of the sixteen lockers * * *" at the time of the loading of this boxcar.

■■ Clearly the defendant was negligent in the way it loaded the boxcar in respect to its duty to exercise reasonable care to protect employees of the consignee from possible injury when they were in the act of unloading the cargo. This negligence was a proximate cause of plaintiff's injuries. There was danger from possible falling crates as they stood on end in the boxcar, but this danger did not make plaintiff guilty of contributory negligence when he turned his back to push a crate on the rollers. The danger was not so obvious that it imposed a legal duty on plaintiff to expect it and watch for it at all times.

■■ In addition to the contentions on these post-trial motions that there was no breach of duty by the government and that plaintiff was guilty of contributory negligence, a number of objections have been raised against the introduction of certain testimony at the trial. Over objection, the court allowed plaintiff's expert witness to express an opinion to the effect that the loading pattern utilized by the government was not a safe one; the court likewise allowed plaintiff's doctor to express an opinion as to the causal relationship between the various illnesses suffered by plaintiff subsequent to this accident. The government contends that it was error to permit these experts to express an opinion on questions of ultimate fact. Since one of the important issues before the trial judge was whether or not the freight car was loaded properly and in a safe manner, the testimony of the expert on loading was relevant and admissible to help the finder of fact to decide this question. Since another issue was the amount of the damages, the testimony of the medical expert was relevant to help the finder of fact to determine how much of the injury was due to the accident, especially in making a finding of fact on the question whether later operations were caused by the accident rather than by improper medical care at the time of the first hospitalization.

The government also questions the admissibility over objection of the testimony of plaintiff's doctor that plaintiff told him that he was "injured by * * * boxes * * * that had fallen on top of him from behind * * * which threw him to the ground * * * after which he had pain in his right hip."

This statement was part of the medical history of the patient and was medically germane. Moreover, there was ample testimony elsewhere in the record to sustain the finding that plaintiff was struck from behind by a falling crate. The admission of this testimony was not prejudicial error.

Finally, it should be noted that all these objections to the introduction of testimony were made in a paper entitled "Government's Supplemental Motion for a New Trial", which was filed on January 28, 1964, over three and one-half months after the entry of judgment in this case, more than three months after the court's findings were filed and more than two months after the transcript of testimony had been filed. These objections are not timely. Fed.R.Civ.P. 59(b); 6(b).

### ORDER

And now, this 26th day of May, 1964, the court makes the following order: (1) The motion of the United States of America to amend the judgment of the court is denied; (2) The motions of the United States of America for a new trial are denied; (3) The motions of the United States of America for the amendment of the Conclusions of Law filed by the court are denied; (4) The motions of the United States of America to amend the court's findings of fact Paragraph Numbers 7, 8, 9, 11, 16, 17, 18, 19, 20 and 26 are denied; (5) The court's finding of fact Paragraph Number 21 is stricken; (6) The court's finding of fact Paragraph 10 is amended to read: "Plaintiff was employed generally as a crane operator but he helped in the work of unloading boxcars once or twice a week."