Henry BEROLZHEIMER, Plaintiff-
Appellant,

v.

The HEIL COMPANY, a corporation,
Defendant-Appellee.

No. 14614.

United States Court of Appeals
Seventh Circuit.

Jan. 8, 1965.

———◆———

Karl Berolzheimer, James G. Staples, Chicago, Ill., Ross, Hardies, O'Keefe, Babcock & McDugald, Chicago, Ill., Parker & Carter, Chicago, Ill., of counsel, for appellant.

Arthur L. Morsell, Milwaukee, Wis., Edward H. Hickey, Chicago, Ill., Marvin E. Klitsner, Milwaukee, Wis., Foley, Sammond & Lardner, Milwaukee, Wis., Bell, Boyd, Lloyd, Haddad & Burns, Chicago, Ill., of counsel, for appellee.

Before KNOCH, CASTLE, and SWYGERT, Circuit Judges.

KNOCH, Circuit Judge.

Plaintiff-appellant, Henry Berolzheimer, brought this action in the Superior Court of Cook County for injunction, accounting and damages for breach of a confidential disclosure, wrongful appropriation of an allegedly original and novel concept for a refuse collection truck body, and breach of contract. After the case had been removed to the District Court (there was diversity of citizenship), plaintiff amended his complaint to request compulsory assignment of defendant's patent.

The District Judge tried the cause without a jury, made his findings of fact and conclusions of law, which were favorable to the defendant, holding that plaintiff had failed to establish by a preponderance of the evidence that he disclosed any novel concept, design or device to defendant which defendant adopted or appropriated, and entered judgment against plaintiff from which this appeal is taken.

Many of the facts are agreed or uncontroverted. Henry Berolzheimer was employed by the City of Chicago's Department of Streets and Sanitation from

1954 to 1961, as an automotive engineer. His duties included writing specifications for the equipment used by the Department and recommendations for improvements to such equipment.

The Heil Company which manufactures and markets refuse collection equipment, had been a major supplier of such equipment to the City between 1941 and 1948, after which the City preferred to use one of the compacting type of refuse collection truck bodies which appeared on the market between 1948 and 1949 and which were well known in the trade. These used a packing blade to compact as well as load the refuse in the truck body.

About 1953, Heil Co. developed its "Colectomatic" which required the operator to load the hopper with one batch at a time. Each batch was removed from the hopper by the packer plate and forced into the truck body. The Colectomatic was a rear loader, a type available on the market prior to April 10, 1957, which contained no ejector plate but which was unloaded by gravity dumping when the tailgate mechanism was swung out of the way. The loading blade in the tailgate compacted the refuse when sufficient refuse was loaded to react against the front.

The other major type available prior to April 10, 1957, was a side loader, manually loaded through side doors near the front of the truck and unloaded by an ejector plate moved from front to rear to push the refuse out of the rear doors. The ejector plate could also be used to compact the load toward the closed rear doors. Neither of these should be confused with the "duo-press conpaction" discussed later.

Donald C. Koentop, Heil's Chicago district sales representative, frequently called on Mr. Berolzheimer trying to persuade him to have the City buy Heil equipment. On the basis of a loading time-tonnage bidding formula devised by Mr. Berolzheimer, most of the units sold to the City during the first part of 1957 and the years immediately preceding were of a continuously loading type. Mr. Berolzheimer pointed out to Mr. Koentop that Heil would have to provide much faster loading than the equipment then used by the City to compete successfully.

A few days prior to April 10, 1957, Mr. Berolzheimer told Mr. Koentop that he had an idea for a continuous loader. He prepared a drawing which was plaintiff's Exhibit B at the trial, and on April 10, 1957, met with Mr. Koentop and and George Rea, Heil's chief engineer. Mr. Rea signed Mr. Berolzheimer's drawing and another document prepared by Mr. Berolzheimer, plaintiff's Exhibit A at the trial, to the effect that Heil would not patent or use as a basis of design the plan of mechanism for a continuous loading, compacting type refuse collection truck body, or any of its components, submitted by Mr. Berolzheimer, without his consent and agreement as to payment, unless the plan was shown to infringe an existing patent. Mr. Berolzheimer signed defendant's Exhibit 1, to the effect that as a condition to Heil's consideration of suggestions from outside persons, the latter acknowledged that Heil assumed no obligation in the absence of a formal written contract, and was released from any liability in connection with use of a suggestion submitted, except liability on a valid patent. When he signed defendant's Exhibit 1, Mr. Berolzheimer filled in the words "a continuous loading refuse collection truck body" to describe his suggestion.

In addition to Mr. Koentop, Mr. Rea, and Mr. Berolzheimer, the late George Urban, then one of Heil's engineers, was present at the conference on April 10, 1957, and, for part of the time, Heil's president, Joseph Heil. There are conflicts in the testimony of the surviving witnesses to this conference as to the matters covered. However, Mr. Berolzheimer's own impression was that the conference ended on a negative tone and that Heil had no further interest in his proposal. He did not resubmit the proposal to Heil or to anyone else, although, as indicated, his duties included making recommendations for improvements in equipment used by the City. His assertion of a claim of oral disclosure to Heil

came only after the holder of the subsequently acquired Urban patent had publicized the invention. Cf. Friedman v. Washburn Co., 7 Cir., 1946, 155 F.2d 959, 962; Rosenthal v. Celanese Corp. of America, 2 Cir., 1943, 135 F.2d 405, 406.

On March 23, 1960, George Urban filed a patent application on Heil's Colectomatic Mark II refuse collection unit on which a patent issued August 14, 1962. This unit is advertised as featuring "duo-press compaction." It is not a continuous loader but employs a complicated batch loading mechanism disclosed in the Urban patent.

It was Mr. Berolzheimer's recollection that he described his design at the conference on April 10, 1957, as incorporating the principle of transferring refuse from a hopper at the rear and packing it into the body of the truck by an hydraulically operated packer plate in the tailgate against an hydraulically operated ejector plate in the body which would gradually move forward toward the cab from the force of the refuse being compressed against it by the packer plate by pressure which would have to exceed slightly the resistance of the ejector plate for continuous or "duo-press compaction."

Heil's two surviving witnesses to that conference testified to the contrary, that Mr. Berolzheimer described the use of the ejector plate for packing purposes only in the manner in which it was already being used in side loading units, that is, moved back and forward from time to time ramming the refuse against the back of the truck.

The District Judge who heard the witnesses and examined the documentary evidence in the light of their testimony, made the following findings of fact:

"23. Plaintiff's Exhibit B, without any explanation, shows a rear loading refuse collection truck body having an hydraulically operated packer plate in the tailgate and an hydraulically operated ejector plate in the body. In one view, it also shows the ejector plate toward the rear with a man dumping refuse into the hopper and the packer plate at several positions during the loading cycle. In another view, the ejector plate is shown toward the rear while the packer plate is midway in its path of travel.

"24. It is impossible to ascertain from plaintiff's Exhibit B without more whether plaintiff's design as described by him to defendant's representatives at the conference in question included the concept of continuous or dual compaction. The exhibit and notations thereon are consistent with either continuous compaction or the conventional use of the ejector plate as a sporadic packing device.*

"25. Plaintiff's Exhibit B contains no description of the engineering and hydraulic arrangements necessary to achieve the pressure relationship between packer and ejector plates to achieve dual compaction.

"26. The exhibits indicate clearly that the principal characteristic of plaintiff's unit as he then conceived it was its capacity for continuous loading. His Exhibit A describes it as a 'continuous loading, compacting type refuse collection truck body' not a 'continuous loading *and* compacting' etc. In filling out defendant's Exhibit 1, he described it only as 'A continuous loading refuse collection truck body.'

"27. No other documentary evidence corroborating plaintiff's recollection testimony of what he said at the conference in question has been adduced.

"28. The only novel design or concept which plaintiff claims he submitted to defendant and which has been adopted by the latter is continuous or dual compaction."

* The only written descriptions on the sketch, plaintiff's Exhibit B, are: "1. Lock pusher plat in up position to raise tailgate 2. No. hoist"

Plaintiff contends that the District Judge misapprehended the evidence, that this Court may draw its own inferences from the documentary evidence, and that the District Court erroneously excluded the proffered testimony of Jacob H. Press, Jr.

Mr. Press testified that he had nearly thirty years' experience in building motor truck bodies, including dump bodies, and refuse bodies for bulk units, and in repairing and mounting packer type bodies, although he was not an engineer. He had seen the drawing, plaintiff's Exhibit B, two days prior to testifying at the trial. If permitted to do so, he would have testified that the drawing was not ambiguous and that he saw in it only continuous or dual compaction.

Professor John E. Blair, an engineer, who was plaintiff's expert witness in his case in chief, testified on cross examination that the drawing did not necessarily disclose dual compaction without the oral explanation which Mr. Berolzheimer testified he had, and Heil's witnesses testified he had not, given at the conference on April 10, 1957.

Although not listed as a proposed witness pursuant to pre-trial order of Court, Mr. Press was offered as a rebuttal witness, presumably to rebut the evidence that the drawing was ambiguous. However, the disclosure of the drawing was a fundamental element of the case in chief. Mr. Press, not an engineer, would have testified to his impressions of the drawing. The issue of Mr. Press' qualification as an expert rested largely within the discretion of the Trial Judge. Nystrom v. Bub, 36 Ill. App.2d 333, 184 N.E.2d 273, 279 (1962); Mahlstedt v. Ideal Lighting Co., 271 Ill. 154, 170, 171, 110 N.E. 795 (1915). We find no error in excluding Mr. Press' proffered testimony.

This Court will not overturn findings of the District Judge which are based on substantial evidence, and, contrary to plaintiff's assertions, on what must have been a determination of the credibility of witnesses who testified to conflicting versions of the facts. His findings must stand unless clearly erroneous, due regard being given "to the opportunity of the trial court to judge of the credibility of the witnesses." Federal Rules of Civil Procedure, Rule 52(a). Graver Tank & Mfg. Co. v. Linde Co., 339 U.S. 605, 609, 610, 70 S.Ct. 854, 94 L.Ed. 1097 (1950); Heyman v. Ar. Winarick Inc., 2 Cir., 1963, 325 F.2d 584, 589 and cases there cited.

The District Court concluded:

Plaintiff has failed to establish by a preponderance of the evidence that he disclosed any novel concept design or device to defendant which the latter has adopted or appropriated.

Our study of the testimony and the exhibits convinces us that the District Court's judgment must be affirmed.

Affirmed.