Floyd Gene **BRIDGER**, Plaintiff-Appellee,

v.

**UNION RAILWAY COMPANY,**
Defendant-Appellant.

**No. 16179.**

United States Court of Appeals
Sixth Circuit.

Feb. 2, 1966.

Thomas R. Price, Memphis, Tenn. (Canada, Russell & Turner, Memphis, Tenn., of counsel), for appellant.

Lucius E. Burch, Jr., Memphis, Tenn. (W. J. Michael Cody, Memphis, Tenn., on the brief; Burch, Porter & Johnson, Memphis, Tenn., of counsel), for appellee.

Before EDWARDS and CELEBREZZE, Circuit Judges, and CONNELL *, District Judge.

---

* Honorable James C. Connell, Chief Judge, United States District Court, Northern District of Ohio, Eastern Division, sitting by designation.

CONNELL, District Judge.

This is an action brought by plaintiff against defendant under the provisions of the Federal Employers' Liability Act, 45 U.S.C.A., Section 51 et seq., for personal injuries sustained on November 29, 1961.

The defendant, Union Railway Company, is that type of a railroad commonly referred to as a Belt Line railroad, running only in and around the City of Memphis, and engaging in the operation of switching railroad cars for the various industries located therein. Plaintiff had been in defendant's employ as a switchman for almost eighteen years at the time he sustained such injuries.

On the night of November 29, 1961, plaintiff, while flagging the movement of a switch engine north across Chelsea Avenue in the City of Memphis during switching operations, was struck by a panel truck going east on Chelsea Avenue driven by a man named Free. Plaintiff was crushed against the front of the engine by the truck, suffering the loss of a leg and other serious injuries.

The accident occurred at the point where defendant's track intersects Chelsea Avenue, one of the most heavily traveled streets in Memphis. The track angles sharply across Chelsea, and serves several industries on the north side of the street. Although the evidence indicates that these crossings were normally made at night, the only permanent warning device utilized by the railroad at this scene was a cross buck sign, which consists of a piece of erect iron pipe holding a wooden cross at the top, containing the lettering "Railroad Crossing." The sign is neither lighted nor reflectorized, and is raised to a height which is sometimes above the normal vision of a motorist approaching the crossing. The view which approaching vehicular traffic would have of an oncoming train is greatly curtailed by the acute angle at which the track intersects Chelsea and a seawall which runs parallel to Chelsea.

Just prior to the accident which caused the plaintiff's injuries, the foreman of the switching crew, Roy Eugene Brandon, and the plaintiff had been riding the engine until it stopped at the intersection of Chelsea. The two then proceeded, side by side, Brandon with a lighted fusee and the plaintiff with a red lantern, to flag the oncoming traffic on Chelsea. As the engine got about halfway to the center line of the street, plaintiff and Brandon began walking alongside the engine on its west side, in the same direction the engine was going; an eastbound automobile had, in the meantime, stopped in the middle lane. At this time a truck approached from the west in the lane of traffic immediately behind the stopped automobile. At this time both the plaintiff and Brandon were still on the west side of the engine; both had intended to climb aboard the side steps of the engine and ride the rest of the way across the street. Brandon got on first, and just as plaintiff started to step up Brandon saw the truck coming toward the front of the engine, and ran down the side steps, blocking the plaintiff's way to safety. Plaintiff's only alternative was an unsuccessful attempt to scramble up the front of the engine. The truck careened into the engine and pinned the plaintiff, crushing his leg.

In his complaint, the plaintiff charged his employer with failing to use ordinary care in providing him with a safe place to work and further that the defendant failed to devise a safe method of performing the flagging at this crossing, and further that the negligence of the defendant's employee, Brandon, in obstructing the plaintiff's access to safety, was negligence attributable to the railroad which, in whole or in part, was a direct and proximate cause of the plaintiff's injuries. The defendant disclaimed any wrongdoing and answered that the sole proximate cause of the plaintiff's injuries was the negligence of the truck driver. The jury returned a general

verdict in favor of the plaintiff, and assessed his damages at $60,000.00.[1]

Since the impetus of the defendant's appeal is directed to the trial court's rulings on evidentiary matters, it would be useful to reiterate the gravamen of an action by a railroad employee under favor of the Federal Employers' Liability Act, 45 U.S.C.A. § 51:

> Every common carrier by railroad while engaging in commerce between any of the several States, * * * shall be liable in damages to any person suffering injury while he is employed by such carrier in such commerce, or, in case of the death of such employee, to his or her personal representative, for the benefit of the surviving widow * * * and children of such employee, * * * for such injury or death resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier, or by reason of any defect or insufficiency, due to its negligence, in its cars, engines, appliances, machinery, track, roadbed, works, boats, wharves, or other equipment.

The statute contemplates that the railroad furnish its employees with a reasonably safe place to work, but the rule does not contemplate absolute elimination of all dangers, but only the elimination of those dangers which could be removed by reasonable care on the part of the employer. Raudenbush v. B. & O. Railroad, 160 F.2d 363, (3rd Cir. 1947). The question is not whether the railroad has placed its employees in a locale which proved to be unsafe, but whether the railroad, by failing to exercise all reasonable care, participated in any manner to effect or permit the unsafe condition. Of course, "reasonable foreseeability of harm is [also] an essential ingredient of Federal Employers' Liability Act negligence." Gallick v. B. & O. Railroad Co., 372 U.S. 108, 83 S.Ct. 659, 9 L.Ed.2d 618 (1963). There was ample and cogent evidence of the foreseeability here in the notice from its many employees that this was the most dangerous crossing in Memphis, as they had so often reported to their employer railroad.

Since the railroad is not an insurer of its employees' safety, the ultimate question upon which the plaintiff's case rests is whether reason dictates that the railroad should have done more to promote its employees' safety. In pursuit of this issue, the plaintiff here has sought to establish (1) that the Chelsea Avenue crossing was one of unusual hazards; (2) that the defendant had notice of these hazards; (3) that the railroad acted unreasonably in failing to reduce the hazards of its crossing; and (4) that, ultimately, the railroad was liable to the plaintiff for exposing him to an unreasonable risk of harm by placing him in an unsafe place to work.

The defendant resisted at trial, and now cites as error on appeal, the introduction of opinion evidence as to the dangerous character of the crossing and whether safe railroading practices would require other means of warning vehicular traffic. The defendant also attacks

---

1. While the alleged misconduct of the truck driver may well have been a significant causal factor leading to the plaintiff's injuries, the jury rejected the defense argument that the driver's negligence was the *sole* proximate cause after a full charge by the court on this point:

> Members of the jury, I charge you that if you find that the defendant railroad, through its servants, agents and employees, was guilty of negligence, even though slight, which contributed in whole or in part to the accident and Mr. Bridger's injuries, he would be entitled to recover in this case, even though you find that the accident and injuries were also caused by the negligence or wrongful conduct of the driver of the panel truck which was involved in this accident.
>
> However, if you find that the driver of the panel truck was guilty of negligence which was the sole and only cause of the accident, then you must find for the defendant railroad. (P. 833 Tr.)

Since neither party propounded any special interrogatory to the jury which would further illuminate the basis of their verdict, we must assume that the jury obeyed the above quoted admonition of the court.

the admission of evidence of prior similar accidents at the crossing in question, both by the spoken word of the plaintiff's witnesses and the mute testimony of the Memphis Police Department accident investigation records. The third assignment of error claimed by the defendant challenges the trial court's rejection of the defendant's compliance with certain municipal ordinances of the City of Memphis. Finally, the defendant has expressed a dissatisfaction with the court's refusal to present the defendant's requested charges.

■ Over the defendant's objection, the plaintiff's witnesses were allowed to testify that, in their opinion, the crossing was dangerous, unsafe, hazardous, etc. This negative testimony came from six switchmen whose combined railroading experience exceeded a century. Defendant argues that this case did not present a situation requiring the use of expert testimony, and that the introduction of these opinions invaded the province of the jury. We state preliminarily that a trial judge is vested with a wide discretion in determining whether or not expert testimony is admissible. Salem v. U. S. Lines Co., 370 U.S. 31, 82 S.Ct. 1119, 8 L.Ed.2d 313 (1962); Joseph A. Bass Co. v. United States, etc., 340 F.2d 842 (8th Cir. 1965); Berolzheimer v. Heil Co., 340 F.2d 122 (7th Cir. 1965); Jones v. Goodlove, 334 F.2d 90 (8th Cir. 1964); Thomas v. Harper, 385 S.W.2d 130 (Tenn.App.1964). The trial judge's discretion is necessarily broad for he sits in the arena of litigation. He knows from the pleadings the contentions of the parties, the direction which the case will take, and from his experience can predict, as the evidence unfolds before him, the problems with which the jury must wrestle. From his exposure to the peculiar circumstances of a particular case, he is best suited to answer Professor Wigmore's determinative question: "On *this subject* can a jury from *this person* receive appreciable help?" 7 Wigmore, Evidence 21 (3rd Ed.1940). For this reason the United States Supreme Court has ordained that the wide

bounds of the trial Judge's discretion shall remain unimpinged unless and until his action is manifestly erroneous. Salem v. U. S. Lines Co., supra. Cf. also, McCormick, Evidence (1954).

■ To warrant or permit the use of expert testimony, two conditions must be met: first, the subject matter must be closely related to a particular profession, business or science and not within the common knowledge of the average layman; second, the witness must have such skill, experience or knowledge in that particular field as to make it appear that his opinion would rest on substantial foundation and would tend to aid the trier of fact in his search for truth. The qualifications of these six witnesses are beyond argument; their individual years and collective decades spent in the railroad business undoubtedly qualify them to speak with authority on railroad safety. Their lives depend upon it. The defendant argues (Appellant's Brief P. 11) that "the matter in dispute is of such common knowledge and involves causes and effects so readily within the knowledge of the jury that this testimony is clearly an usurpation of the judicial function."

The defendant points out that in the *Salem* case, supra, the court upheld the trial Judge's rejection of expert testimony because—

\* \* \* there was before the jury sufficient evidence, both from oral testimony and from photographs, for it to visualize the platform on and from which the plaintiff fell and to determine whether some railing or handhold in addition to the structure present was reasonably necessary for the protection of a seaman passing from the ladder to the platform in the swaying mast. 370 U.S. 31, 36, 82 S.Ct. 1119, 1123.

While this case reflects a situation where expert testimony would be superfluous in appraising the safety of a worker's place of activity, it sheds no light upon our question. Obviously, a person of ordinary experience, indeed anyone who

has climbed a ladder, could have deduced, unaided by an expert, the necessity or lack of necessity of a hand railing in the *Salem* case.

The defendant cites Schillie v. Atchison, Topeka & Santa Fe, 222 F.2d 810 (8th Cir. 1955), an action for death of a railroad employee who fell while climbing a batter post on a railroad bridge. The plaintiff offered opinion evidence by experts that the batter post was not reasonably safe without grab-iron steps. The trial court excluded this testimony on the ground that it was not a proper subject for expert testimony. While the Eighth Circuit Court of Appeals affirmed on this part, its reasoning lends a profitable direction to us here:

> The trial court obviously concluded that a juror, who presumably had never climbed one, would be as able to decide whether a steel beam, such as this batter post, was reasonably safe for an experienced bridge worker to climb, as a bridge worker witness who regularly climbed them. We would have reached a different conclusion, but the area of discretion on the part of the trial judge is such that the cause would not be reversed for that reason. (p. 814)

These cases merely establish the proposition that where a trial court is of the opinion that the issue at bar is not so complex as to require for its resolution the assistance of one particularly schooled in that field, his discretionary rejection of such testimony will not be disturbed unless manifestly erroneous. Because of the particular circumstances of individual cases, there has arisen a generous dichotomy of authority regarding the general admissibility of expert testimony relating to the ultimate question of fact, and in particular regarding the safety of railroad practices. Cf. Anno. 62 A.L.R.2d 1426, and cases cited therein. We subscribe to the view that the question of admissibility of opinion evidence clothed with the weight of expertise necessarily requires an *ad hoc* determination, predicated upon the probable value of the witness's testimony in relation to the intricacies of the particular lawsuit. Therefore, while we are gently persuaded by the expressions of other courts resolving similar conflicts, we feel no compulsion to follow either view with blind adherence.

We are persuaded, for example, by Jablonowski v. United States, 230 F. Supp. 740 (E.D.Pa.1964), where the plaintiff was injured while helping to unload a railroad boxcar containing a cargo of heavy wooden grated steel lockers. Over objection, the court allowed the plaintiff's expert witness to express an opinion to the effect that the loading pattern utilized by the government was not a safe one. After trial, the government filed a motion for a new trial, which the court overruled, reiterating its previous position on the admissibility of expert testimony.

> The government contends that it was error to permit these experts to express an opinion on questions of ultimate fact. Since one of the important issues before the trial judge was whether or not the freight car was loaded properly and in a safe manner, the testimony of the expert on loading was relevant and admissible to help the finder of fact to decide this question. 230 F.Supp. 740, 743.

We are favorably impressed with Thompson v. Calmar Steamship Corp., 216 F.Supp. 234 (E.D.Pa.1963), aff'd 331 F.2d 657 (3rd Cir. 1963), cert. den. 379 U.S. 913, 85 S.Ct. 259, 13 L.Ed.2d 184 (1964). The plaintiff there was a longshoreman employed to load shipments of steel from gondola freight cars directly to the defendant's anchored vessel. In the process of shifting the freight cars the plaintiff was jolted from his position on top of one of the cars and fell between it and the next one. The court properly admitted expert testimony which showed how dangerous was the method used to shift these cars and "how easy it would have been to adopt any one of a number of other reasonably safe methods." 216 F.Supp. 234, 240. Similarly, in LaFrance v. New York,

New Haven & Hartford R. R. Co., 191 F.Supp. 164 (D.C.Conn.1961), aff'd. 292 F.2d 649, (2nd Cir. 1962), evidence of the proper manner of throwing a switch on a railroad was admissible because that act is one "beyond the scope of the common knowledge and experience of jurors." 191 F.Supp. 164, 167. Finally, we are impressed with Atlantic Coastline R. R. Co. v. Dixon, 207 F.2d 899 (5th Cir. 1953), where the plaintiff had been injured when he mistakenly plugged a connection for a portable electric light cable into an outlet of a power circuit carrying 440 volt current instead of one carrying only 110 volts as he thought it did. The court held that it was proper for the plaintiff's counsel to ask the railroad's chief electrician whether the circuit carrying 440 volt current would have been safer if someone had not left the switch on.

What these cases teach us is that the business of operating a railroad entails technical and logistical problems with which the ordinary layman has had little or no experience. These authorities lead us to the same conclusion which this court reached in Detroit, Toledo & Ironton R. R. Co. v. Banning, 173 F.2d 752 (6th Cir. 1949) where we stated:

> The general rule permits a witness who is experienced in technical matters and qualified to do so, to give his opinion in a matter which is not one of common knowledge, although it involves an ultimate fact to be finally decided by the jury. * * * Appellant's contention that the general rule is applicable in the present case, in that the proper operation of a railroad involves a combination of factors not within the knowledge of the average juryman appears to have support in the authorities.

This proposition also has support in reason and logic. It is absurd to contend that the average layman has, as a matter of common knowledge, a sufficient grasp of the diverse factors which must be considered in constructing and maintaining an acutely angled railroad crossing which will afford a maximum of safety and a minimum of inconvenience to vehicular traffic and train movement.

We will not disturb the trial court's ruling that expert testimony was required to assist the jury in determining whether the crossing should have been attended in a safer manner.

Defendant also claims that it suffered by the incorporation into the evidence of testimony concerning prior similar accidents and near-accidents at the Chelsea Street crossing. It is the appellant's position that such evidence is admissible for the purpose of showing notice of, and as evidence of, a dangerous condition only in cases where the injury arises out of the physical condition of the premises and such evidence should be excluded in cases where the issue relates to the manner of use of the premises at the time of the injury. We think the defendant has over-simplified the issues of this case. According to the plaintiff's theory of recovery, he undertook to prove (1) the particular crossing was so constructed as to make the probability of collision between vehicular traffic and a slow-moving train reasonably foreseeable; (2) by reason of similar prior accidents and near-accidents the railroad was aware of the likelihood of such a future collision; (3) a reasonably prudent railroad would have installed more effective warning devices to reduce the possibility of a collision between the train and the truck; and (4) by exposing its employee to known hazards of flagging vehicular traffic at a dangerous crossing, the railroad failed to use reasonable care in providing its employee with a safe place to work. While the ultimate question of fact is whether the railroad exercised reasonable care in placing this particular plaintiff at his post at the particular time in suit, the mediate facts upon which plaintiff predicates his first theory of recovery expose additional issues to the jury's scrutiny. Under the theory which the plaintiff has advanced, therefore, the character of the crossing is most certainly drawn into issue and the question of whether the railroad had notice of any danger evidenced by prior in-

cidents at that crossing becomes most critical. Therefore the plaintiff was entitled to adduce the testimony of which the defendant here complains.

This is fully compatible with this court's view, as expressed in Illinois Central R. R. Co. v. Sigler, 122 F.2d 279 (6th Cir. 1941), wherein the appellant had complained of alleged error in the admission of evidence of other collisions at a crossing between trains and motor vehicles.

> Such evidence was held admissible not only to show the dangerous character of the place but also to show that knowledge thereof had been brought to the attention of those responsible therefor. 122 F.2d 279, 284.

Defendant cites Baltimore & Ohio Railroad Co. v. Moore, 13 F.2d 264 (3rd Cir. 1926), where the Third Circuit Court of Appeals held to be improperly admitted testimony of a witness who said that he had had a near-accident at the crossing in question. A close reading of that case, however, indicates that, even if it was correctly decided, it is but a reflection of an anachronistic adherence to the strict rules of pleading and rules of evidence which must conform to those strict rules of pleading. The impact of this case was softened somewhat by the adoption of the Federal Rules of Civil Procedure, thus leading to its repudiation by that same Third Circuit Court in Evans v. Pennsylvania Railroad, 255 F.2d 205, 70 A.L.R.2d 158 (3rd Cir. 1958). In that case the plaintiff, a passenger in an automobile involved in a collision with a train, recovered a judgment against the railroad on the theory that the crossing was extremely hazardous and that the railroad's warning devices were inadequate. The trial judge, in Evans, as did the court in the instant case, expressly stated that his ground for the admission of evidence of previous accidents at the same crossing was not that it tended to show negligence on the part of the railroad but that it constituted notice to the defendant of the danger-

ous character of the crossing. 255 F.2d 205, 209.

The defendant has also cited Cahill v. New York, New Haven & Hartford Railroad Co., 236 F.2d 410 (2nd Cir. 1956), where an inexperienced flagman was struck by a car while flagging traffic at a crossing. A list of accidents was admitted into the evidence, of which the court said, at p. 411:

> The collisions occurred during a period from January 4, 1946 to February 9, 1953. In none of them does it appear that any railroad employee or other person sustained injuries. The defendant argues that since these collisions were not shown to have been caused in a manner similar to the plaintiff's accident they were not relevant. The list of them was admitted for the sole purpose of supporting the plaintiff's claim that the Railroad knew or reasonably ought to have known that the particular location was an unsafe place to put him to work because of his inexperience and the claimed inadequacy of instructions given him as to his duties. For this limited purpose we think the list of prior accidents was admissible.

The defendant contends that because the plaintiff in the instant case was a man of experience who had worked at that particular crossing before, the basis for admission of such evidence in the Cahill case does not exist here. The defendant has failed to realize that even this case militates for the admissibility of the challenged testimony; in the case at bar the list of accidents was properly admitted for "the purpose of supporting the plaintiff's claim that the Railroad knew or reasonably ought to have known that the particular location was an unsafe place to put him to work" because of the unreasonable risk of collision between the defendant's train and a private vehicle whose driver is not afforded an adequate warning of the crossing. As stated by Mr. Justice Black, when, in dissent, he questioned the necessity of sending Cahill back to the Second Cir-

cuit to determine the admissibility of evidence which we have just quoted:

Certainly there is no error asserted here that justifies sending this case back to the Court of Appeals. The error claimed relates to the admissibility of evidence concerning prior accidents. Cahill's case against the railroad was based in large part on the failure to give him proper instructions before sending him to work in a dangerous place when he had never done such work before. This made the railroad's knowledge of the danger of highway traffic at that location highly relevant in proving the railroad negligent. What better proof could there be than the fact that the railroad knew there had been repeated accidents at the same location of the kind that brought about Cahill's injury? No fair system of evidence would exclude such testimony when issues are raised like those involved here. Cahill v. New York, New Haven & Hartford Railroad Co., 351 U.S. 183, 189–190, 76 S.Ct. 758, 762, 100 L.Ed. 1075 (1956).

We hold, therefore, that testimony concerning prior accidents and near-accidents was properly admitted.

The defendant also assigns as error the admission into evidence of accident reports of the Police Department of Memphis concerning four prior accidents at the Chelsea Street crossing; these particular records were accepted by the court under the Federal Business Records Act, 28 U.S.C. § 1732. The defendant resists these records on the grounds that (1) accident reports are not "business records" within the contemplation of the Act; (2) the investigating officers who made the reports were not witnesses in the case; and (3) the reports contain unreliable hearsay statements.

Defendant's first point carries little weight. It is the "business" of police departments to enforce local law and the reports by which they chronicle violations of those laws are as much a "business record" as any corporate profit ledger. It is the "business" of local police departments to investigate accidents within the municipal boundaries; these investigations enable the police to determine what, if any, violations of law occurred, what citations, if any, should issue, and what future safety measures might be employed to prevent the recurrence of such an accident. Therefore we must conclude that police accident reports are within the ambit of the term "business records" contained in the Act. Cf. McKee v. Jamestown Baking Co., 198 F.2d 551 (3rd Cir. 1952). Furthermore, the Supreme Court of Tennessee has recently recognized that police department records are admissible under authority of the Tennessee Uniform Records Act (T.C.A. §§ 24–712 to 24–715). Gamble v. State, 383 S.W.2d 48, 57 (Sup.Ct.Tenn. 1964). Therefore, by the express command of Rule 43(a) of Federal Rules of Civil Procedure,[2] the records most certainly would be admissible in a federal court sitting in Tennessee.

It is immaterial that the persons who made these reports were unavailable for testimony; one of the purposes of this section is to eliminate the common law requirement that the entrant must appear to authenticate the record. United States of America v. New York Foreign Trade Zone Operators, Inc., 304 F.2d 792 (2nd Cir. 1962). We need only require that the report be

---

**2.** In all trials the testimony of witnesses shall be taken orally in open court, unless otherwise provided by these rules. All evidence shall be admitted which is admissible under the statutes of the United States, or under the rules of evidence heretofore applied in the courts of the United States on the hearing of suits in equity, or under the rules of evidence applied in the courts of general jurisdiction of the state in which the United States Court is held. In any case, the statute or rule which favors the reception of the evidence governs and the evidence shall be presented according to the most convenient method prescribed in any of the statutes or rules to which reference is herein made. The competency of a witness to testify shall be determined in like manner.

made in the normal course of business and that the person who offers it be in a position to attest to its authenticity.

■ Defendant points out that we held in Schmeller v. United States, 143 F.2d 544, 550 (6th Cir. 1944) that the Act—

* * * in no way repealed the ordinary requirements of relevancy and competency. The District Court should have examined and ruled upon each paper separately and should have excluded the hearsay and other incompetent evidence.

However, we stated in Continental Baking Co. v. United States, 281 F.2d 137, 148 (6th Cir. 1960), that the incorporation of hearsay statements and personal opinions in an otherwise admissible business record does not preclude their admissibility under Section 1732; the inclusion of hearsay may properly be considered when attention is directed to the weight which such reports should carry. These reports are obviously relevant since we have repeatedly stated in this opinion that one of the critical issues in the plaintiff's case was whether the Railroad had been given any indication that the crossing was dangerous. Furthermore, the inclusion of hearsay in these records does affect their competency; the records were offered not to establish the truth of what they contained, but only the fact that such statements and reports were made and were available to the Railroad. Therefore we conclude that the records were properly admitted.

■ During the course of trial, the court permitted, with reservation, testimony from the defense that the railroad had complied with municipal ordinances requiring certain warning devices. During his charge, however, the judge instructed the jury to disregard this evidence in determining whether the railroad was in default of its duty to its employee.[3] The defendant now charges that the rejection of this defensive measure was erroneous and operated to the prejudice of the defendant because the railroad was entitled to establish the exculpatory circumstances that it had complied with the city's requirements. The defendant thus would have us permit railroads to look to state law to fashion the duty which they owe to their employees. This argument runs contrary to an uninterrupted flow of authority; furthermore, the case which the defendant cites to support this position resounds against its argument.

In Ft. Worth & Denver Railway Co. v. Threadgill, 228 F.2d 307 (5th Cir. 1956) a railroad employee had sued his employer railroad for injuries which he sustained at a crossing, while turning around a motor car, when struck by a speeding motorist. The railroad foreman was accused of failing to warn the plaintiff of the approach of the motorist; in defense the railroad argued that the foreman had no duty to warn the plaintiff, but rather the foreman had a right to expect that all motorists would comply with the Texas statute which requires a motorist to stop at a crossing when a

3. "Members of the jury, there has been evidence introduced in this trial with respect to charter and ordinance provisions of the City of Memphis having to do with automatic signal lights, human flagmen, gates, crossbuck signs and the like at railroad grade crossings in the city. There was also evidence introduced as to certain action taken by the Commissioner of Public Service of the City with respect to precautions to be taken by the defendant railroad at this particular crossing. After reflection and consideration of the matter, the Court is of the opinion that these charter and ordinance provisions, and the action taken pursuant thereto by the Commissioner of Public Service, should not have been admitted in evidence in this case and you will not consider them for any purpose in determining whether the defendant railroad was guilty of negligence. We are so instructing you because we have concluded that the Federal Employers Liability Act, and the decisions in the Federal Courts thereunder, alone determine and control the legal relations between defendant railroad and the plaintiff in this case, and as I have charged you, you will determine whether the railroad was guilty of negligence which in whole or in part contributed to this accident by applying the standards and rules of law which I have heretofore given you." (pp. 835-36 Tr.)

train is approaching. In the words of the Fifth Circuit Court of Appeals, "such a contention is plainly untenable * * *" 228 F.2d 307, 311.

Courts of the land have long, often, and firmly held that since Congress, by the adoption of the Federal Employers' Liability Act, has preempted the "field of employers' liability to employees and interstate transportation by rail * * * all state laws upon that subject were superseded * * * the rights and obligations of the [railroad employer] depend upon that Act and applicable principles of common law as interpreted by the federal courts." Chesapeake & Ohio R. R. v. Stapleton, 279 U.S. 587, 588, 49 S.Ct. 442, 73 L.Ed. 861 (1929). Thus, in an F.E.L.A. case in which a defendant railroad attempted to show compliance with a municipal ordinance regulating the speed of moving trains within the municipality, the Supreme Court of Minnesota correctly stated:

> The act covers the entire field under which the employer in interstate commerce shall be liable for injury to its employee likewise engaged. It relates solely to the relation of master and servant. It does not supersede state legislation outside of this field, nor does it deal with the duties or obligations of either to the public; but it does supersede all state and municipal legislation governing the circumstances under which the master, while within the provisions of the act, shall be liable for injury to the servant. It follows that the ordinance in question was superseded by the act of Congress, and was not admissible in evidence. McLain v. Chicago Great Western Railroad Co., 140 Minn. 35, 167 N.W. 349, 12 A.L.R. 688 (1918)

Municipal ordinances governing the safety aspects of railroading within a municipality are but the minimal measures which a city will tolerate;

their terms do not prevent railroads from taking further steps in the direction of safety when such steps become necessary to furnish employees with a reasonably safe place to work. An employing railroad must use every reasonable means at hand in the performance of that duty to its employees and in the performance of that duty a railroad cannot defer to the judgment of local officials in regard to railroad safety. Therefore it follows that the court correctly excluded from the jury's consideration the fact that the railroad had complied with the ordinances of the City of Memphis.

The defendant has also accused the trial court of dereliction in his duty to charge the jury fully in regard to the defendant's theory of the case, and, further, that the court was unwarranted in rejecting certain specific requests for charges to the jury. While it is true that the court refused to frame his charge in the carefully phrased trappings of defense language, he nevertheless covered every facet of both the plaintiff's and defendant's cases with unfailing objectivity. Whenever the trial court incorporates into his general charge an adequate and correct statement of the law to which specific requests are directed, a party whose specific charges were refused cannot complain.

Finally, the defendant suggests that the jury's verdict was so against the weight of the evidence that the trial judge abused his discretion in failing to order a new trial. There is ample evidence to indicate that there was some danger at this crossing; further, there is ample evidence to indicate that the railroad had notice of that danger. The jury apparently concluded that the railroad failed to use ordinary and reasonable means of alleviating that danger before placing its employee in a precarious place to work. There was also evidence upon which reasonable minds could decide that the plaintiff's fellow-employee, Roy Eugene Brandon, obstructed the

plaintiff's attempt to reach safety.[4] Without additional information from the jury by way of response to special interrogatories, we are unable to see which theory of the plaintiff prevailed—the railroad's failure to provide a safe place to work or the negligence of the railroad's employee, Brandon. Since the case was submitted to the jury with the evidence in such a state that reasonable minds could come to different results, and both of the prevailing party's theories of recovery are supported by legally sufficient evidence, the jury's determination is sacrosanct from the discretionary powers of any trial court.

The assignments of error to which the defendant has directed our attention are all lacking in merit. We are satisfied that both parties were accorded a fair trial and accorded a full opportunity to present their evidence.

Therefore, the judgment of the District Court is affirmed.

4. Plaintiff himself testified that Mr. Brandon's actions were the cause of his injuries:

    Q. You say that the job was handled improperly on Mr. Brandon's part, I believe, because he did not tell you how to flag that crossing, is that what you are saying?

    A. No, sir, I say the reason I got hurt is because Mr. Brandon ran in front of me when he came down off the Diesel. That was the only reason—that was the reason that I think I got hurt. (Tr. p. 38.)